## STATE *v.* RAILROAD.

### (*Nashville.* March 19, 1896.)

1. RAILROAD TAXATION. *Distributable property.*

   State, county, municipal, and railroad bonds, the property of a
   railroad company, are assessable for taxation as its "distribu-
   table," not as its "localized," property, under Acts 1882, Ch.
   16 (2d Ex. Ses.), which defines and distinguishes the "dis-
   tributable" and "localized" properties of railroads, and pre-
   scribes the methods for their respective assessments. (*Post,
   pp. 386–392.*)

   Acts construed: Acts 1882, Ch. 16 (2d Ex. Ses.).

   Code construed; §§ 686–688, 692, 694, 695 (M. & V.).

2. SAME. *Comptroller is back assessor of omitted distributable property.*

   The State Comptroller, as the collector of taxes laid upon the
   distributable property of railroads, alone had the power to
   back assess such property for taxation, when omitted from
   original assessment for state, county, and municipal purposes,
   and to certify the back assessments thus made for the years
   1892, 1893, and 1894. The back assessment of the distributable
   property of a railroad for said years, by a County Trustee, is
   unauthorized and void. (*Post, pp. 392–406.*)

   Acts construed: Acts 1882, Ch. 16 (2d Ex. Ses.); Acts 1875, Ch.
   78, Sec. 8; Acts 1879, Ch. 79; Acts 1887, Ch. 1; Acts 1883, Ch. 181.

   Code construed: §§ 663, 664, 687, 700, 701, 704, 705 (M. & V.).

   Cases cited and approved: State *v.* Railroad, 14 Lea, 60; Franklin
   County *v.* Railroad, 12 Lea, 539.

   Cited and distinguished: Railroad *v.* Lauderdale County, 16 Lea,
   688–693; Shelby County *v.* Railroad, 16 Lea, 401; Railroad *v.*
   State, 8 Heis., 663.

3. SAME. *Back assessments of distributable property not within Acts
   1889, Ch. 96, Sec. 26.*

   Back assessments of omitted distributable property of railroads
   are not within the contemplation of Acts 1889, Ch. 96, Sec. 26,

   25—12 P

State *v.* Railroad.

empowering certain officers therein enumerated to back assess property omitted or inadequately assessed. (*Post, pp. 406–408.*)

Act construed: Acts, 1889, Ch. 96.

Case cited: Grundy County *v.* Tenn. C., I. & R. R. Co., 94 Tenn., 295.

---

## FROM DAVIDSON.

Appeal from Chancery Court of Davidson County. THOS. H. MALONE, Ch.

Attorney-general PICKLE and CRUTCHFIELD & BYRNES for State.

TILLMAN & TILLMAN for Railroad.

CALDWELL, J. In October, 1895, the State of Tennessee and the county of Davidson jointly filed the bill in this cause against the Nashville & Decatur Railroad Company to recover from it about $7,500 of back taxes, alleged to be due to the complainants, respectively, in the proportion stated in the bill.

Complainants alleged, in substance, that the defendant was "a corporation duly chartered, organized, and existing under, and by virtue of the laws of the State of Tennessee," by and in the corporate name of the Nashville & Decatur Railroad Company, "and having its principal office or place of business at Nashville, Tennessee," in the county of Davidson; that it had for years held and owned a

large amount of valuable interest-bearing bonds—State,. county, municipal, and railroad—on which it had paid no taxes whatever for the years 1892, 1893, and 1894; that said bonds, aggregating in value $251,500 in 1892, $299,100 in 1893, and $343,800 in 1894, were entirely omitted from all assessments for taxation made in those years, in consequence of which the Trustee of Davidson County back assessed them, in June, 1895, for State and county taxes for the three preceding years, and that the defendant had wrongfully failed and refused to pay the taxes so assessed against it, thereby making this suit necessary.

The defendant demurred to the bill, and for cause of demurrer said that the County Trustee had "no power or jurisdiction" to assess said bonds, and that the assessments made by him were, therefore, inoperative and of no avail whatever. The demurrer was sustained, and the bill dismissed. Complainants appealed.

The correctness or incorrectness of the Chancellor's decree is to be determined, mainly, by a construction of certain parts of a special statute relating to the valuation and assessment of property belonging to railroad companies owning or operating railroads in this State. That statute is as follows:

"SECTION 1. *Be it enacted by the General Assembly of the State of Tennessee,* That all of the property, hereinafter termed distributable property, of all the railroad companies owning or operating railroads

State *v.* Railroad.

in this State, shall continue, as heretofore, to be assessed for the purposes of State, county, and municipal taxation by the railroad tax assessor for the State at large, appointed by the Governor. And all other property, real, personal, and mixed, of said railroad, hereinafter termed localized property, shall be assessed for all taxes—State, county, and municipal—by the County Assessor and the Assessors of municipal corporations, under whose charter they have the right to assess property for taxation. Assessments of railroad property shall be made in the manner prescribed by this Act and the Acts amended by it, except in so far as the amended Acts have been declared unconstitutional by the Supreme Court.

"Sec. 2. *Be it further enacted,* That the roadbed of a 'railroad shall include all side tracks, switches, bridges, and trestles, and the ties, rails, and fastenings, and superstructure of every kind.

"Sec. 3. *Be it further enacted,* That the roadbed, rolling stock, franchise, choses in action, and personal property of a railroad company having no actual *situs,* shall be known as its distributable property, and shall be valued by said Assessors separate from the other property of the company; and, after having ascertained the total value of such distributable property, wheresoever situated, whether within or without the State, and, after having deducted from its value one thousand dollars, they shall divide the remainder by the number of miles in the entire length of the road, and the result shall be the value per mile of

such distributable property of such company for the purpose of taxation; and the value per mile of such distributable property, as so ascertained, shall be multiplied by the number of miles in the State, and the product thereof shall be the sum to be taxed to such company upon such distributable property for State purposes; and the value per mile, as so ascertained, shall be multiplied by the number of miles, or fractions thereof, in each county and incorporated city or town through which the road passes, and the products shall be the sums to be taxed upon such distributable property by said counties, towns, and cities, respectively.

"Sec. 4. *Be it further enacted*, That the depot buildings, yards, grounds, and other property—real, personal, and mixed—having an actual *situs*, shall be known as the localized property of such railroad, and shall be valued by the County Assessors and City Assessors of the several districts and wards in which such property is situated in the same manner and upon the same principles that govern the assessment of similar property owned by individuals, and it shall be valued by said County Assessors and City Assessors in the respective counties, towns, and cities in which it is located. The State shall be entitled to a tax upon all such localized property; the counties, towns, and cities shall be entitled to a tax upon the value of all such localized property as is situated within their respective limits.

"Sec. 5 *Be it further enacted*, That the cash value

of the individual shares shall not be deducted from any of said valuation, nor shall any railroad company have any exemption except one thousand dollars, it being the exemption allowed to the other taxpayers of the State.

"Sec. 6. *Be it further enacted*, That all valuations or assessments which may have been made by County, District, or Ward Assessor for the year 1882, shall be superceded by the assessment herein provided for. And the Chairmen or Judges of the several County Courts shall cause the localized property to be assessed by the District and Ward Assessors appointed for the present year, or others appointed by the Chairman or Judge in place of any when vacancies have occurred. And in cases in which there shall be a failure to assess such property under this Act, it shall be assessed by the Trustee or tax collector, as ·in other cases of omission. Assessments to be made by the County Assessors, under this Act, shall be' made by the Assessor, and acted on by the Board of Equalization, by the first Monday in June, 1882, or as soon thereafter as practicable.

"Sec. 7. *Be it further enacted*, That it shall be the duty of the clerk of the County Court of each county wherein the assessors of any district or ward shall have made assessments of any localized property of any railroad company, as hereinbefore provided, to make out and forward to the Comptroller, on or before the first day of May in each year, a full and complete schedule and a list of such local-

ized property so assessed by such District or Ward Assessors, and these lists and schedules shall be submitted by the Comptroller to the State board of railroad tax assessors for the State at large, together with the reports filed by the railroad companies.

"Sec. 8. *Be it further enacted*, That this Act take effect from and after its passage, the public welfare requiring it." Acts 1882 (2d Ex. Ses.), Ch. 16.

Most of the important provisions of this statute were carried into the Code (M. & V.) at §§ 686, 687, 688, 692, 694, and 695. The first section of the Act, Code, § 686, divides all property of railroad companies owning or operating railroads in this State into two classes, designated as "distributable property" and "localized property," and requires that all property of the former class shall be assessed for State, county, and municipal taxation by the railroad tax assessors for the State at large, and that all property of the latter class shall be assessed for State and county taxation by County Assessors, and for municipal taxation by Municipal Assessors. Hence, if the bonds referred to in the bill are "distributable property," they were subject to original assessment, with other property of that class, by the railroad tax assessors for the State at large, and not by County or Municipal Assessors; and, on the other hand, if they are "localized property," they were subject to original assessment, with

other property of that class, by County and Muni-cipal Assessors alone.

, The third section of the Act provides that "the roadbed, rolling stock, franchise, choses in action, and personal property having no actual *situs* shall constitute "distributable property;" and the fourth section provides that "the depot buildings, yards, grounds, and other property—real, personal, and mixed—having an actual *situs*" shall constitute "local-ized property."

The bonds in question fall under the head of "choses in action," and, by express provision of law, constitute a part of defendant's "distributable property," and were, therefore, subject to original assessment by the railroad tax assessors for the State at large, and by no one else.. By whom were they assessable for back taxes if omitted, as alleged in the bill, from the original assessments for the three years named?

The sixth section of the Act requires that "lo-calized property," which has not been assessed origi-nally, shall be back assessed by the Trustee or tax collector of the county or municipality in which it is situated. But the Act is silent as to the back assessment of "distributable property," and no ex-press provision for the back assesssment of that class of property, by name, is found in any other statute. Nevertheless, it seems clear that the duty of back assessing such property, when omitted from original assessments, is devolved upon the Comptroller by

the general statutory provisions on the subject of collection and' assessment of taxes. He is the statutory collector of the State's part of all taxes properly laid on that class of property. Acts 1875, Ch. 78, Sec. 8; Code, §§ 704, 705; Acts 1887, Ch. 1, Sec. 5, p. 22. And, being such collector, he is back assessor of that class of property for State taxation, at least, by virtue of the general statutes which make "all collectors of taxes" on particular property "Assessors to assess" all of that particular property "which, by mistake of law or fact, has not been assessed." Acts 1879, Ch. 79, Sec. 1; Acts 1883, Ch. 181, Sec. 1; Code, §§ 663, 664. It was distinctly so held in the case of *State* v. *Railroad Company*, wherein the State had filed a bill to collect back taxes assessed against the railroad company by the Comptroller. In the conclusion of that part of the opinion relative to the power of the Comptroller to make the assessments there involved, the Court, speaking through Judge Cooper, said: "It is very clear, therefore, that the Comptroller was, in 1883, the collector, and the only collector, of the taxes due by the railroad companies to the State, and consequently the collector whose duty it was to assess omitted property." 14 Lea, 60.

In no event, then, was the Trustee of Davidson County authorized to back assess the bonds here in question (they being "distributable property") for State taxation. The Comptroller, and he alone, possessed that authority. It is worthy of remark that

the assessments considered in the case just cited were for years (1872–74), anterior to the passage of the first special law (Ch. 78, Acts 1875) for the separate assessment of railroad property; and therefore that what the Court there said was not necessarily a decision, in the highest sense, as to the authority of the Comptroller to back assess such property for years subsequent to the enactment of that special law. That is to say, the question of his authority in the latter aspect, though obviously embraced in and covered by the reasoning of the Court, did not arise directly upon the facts of the case, and was not separately discussed in the opinion. It is not perceived, though, how the Comptroller's power to back assess such property could be less for years after the passage of that law than for years prior thereto. Indeed, if there were any difference, it would seem to be in favor of his greater power in the latter case; for, as a part of the special system of railroad taxation inaugurated by that law, he was, for the first time, made the original collector of the State's part of the taxes on all railroad property. Acts 1875, Ch. 78, Sec. 8; Code, §§ 704, 705.

Since the division of railroad property into two classes by Sec. 1, Ch. 16 (2d Ex. Ses.), Acts 1882, the Comptroller has been the original collector of the State's part of taxes laid on "distributable property" only; and County Trustees have been collectors, in the first instance, of State and county

taxes on "localized property." It is now the duty of County Trustees to collect and pay to the Comptroller the State's part of all the taxes on the latter class of property, just as it was the duty of county tax collectors prior to the aforesaid Act of 1875 to collect and pay to him the State's part of all taxes laid on all railroad and other property under general assessment and revenue statutes then existing.

In making original assessments, the railroad tax assessors for the State at large are required to ascertain the value of all the "distributable property" of each and every railroad company owning or operating a railroad in this State "separate from the other property of the company; and, after having ascertained the total value of such distributable property, wheresoever situated, whether within or without the State, and after having deducted from its value one thousand dollars, they shall divide the remainder by the number of miles in the entire length of the road, and the result shall be the value per mile of such distributable property of such company for the purpose of taxation; and the value per mile of such distributable property, as so ascertained, shall be multiplied by the number of miles in the State, and the product thereof shall be the sum to be taxed to such company upon such distributable property for State purposes; and the value per mile, as so ascertained, shall be multiplied by the number of miles, or fractions thereof, in each county and incorporated town or city through which the road

passes, and the product shall be the sum to be taxed upon such distributable property by said counties, towns, and cities, respectively." Acts 1882 (2d Ex. Ses.), Ch. 16, Sec. 3; Code, § 687.

After all that has been done by the railroad tax assessors for the State at large, and the final valuation has been determined by the "Board of Examiners" (Code, §§ 700 and 701), "the Comptroller shall ascertain the amount of taxes due the State from each (company), and notify the company of the same, by letter or otherwise; and he shall certify to the County Court Clerk of each county in which a railroad line lies, the amount to be taxed in said counties, respectively, for county purposes; and likewise to the Mayor of any incorporated town, the amount to be taxed by such town; and the County Court Clerk shall enter the same upon the collector's books, specifying the amount of taxes to be collected." Acts 1875, Ch. 78, Sec. 6; Code, § 703.

When the Comptroller comes to discharge the imperative duty of back assessing omitted "distributable property" for purposes of State taxation, he must, as far as may be necessary in view of the nature of the item or items omitted and to be back assessed, pursue the same statutory rules prescribed for the ascertainment of value in original assessments by the railroad tax assessors for the State at large; and, in so making a back assessment for the State, he must, of necessity, ascertain the greater part, if

not all, of the facts requisite to a back assessment of the same property for county and municipal taxation.

Though not so provided in express terme, it seems fairly inferable that the Legislature intended that the Comptroller should certify the facts so ascertained by him to the respective counties and municipalities concerned, in the same manner and for the same purposes that he is required to certify from original assessments the amounts to be taxed by such counties and municipalities, respectively, and that those facts, when so ascertained and certified by the Comptroller, should serve the same purposes with interested counties and municipalities in the matter of back taxes as do like facts certified from original assessments in the matter of original taxes.

In view of all these provisions and requirements, we are constrained to hold that the Comptroller, as back tax assessor, represents the State and all interested counties and municipalities in the matter of back assessing distributable railroad property in precisely the same manner and to the same extent that they are represented by the railroad tax assessors for the State at large in making original assessments of the same class of property, and that, in his proper functions as Comptroller, he is under obligation in the former case, as in the latter, to certify to all counties and municipalities concerned the amount to be taxed by them, respectively; and, further, that no County Trustee or municipal tax collector

has any authority or power to back assess omitted "distributable property" for State or county or municipal taxation.

It might be plausibly said that the County Trustee and municipal tax collectors, respectively, have authority to back assess omitted distributable property for the purposes of county and municipal taxation, by virtue of the general statutes hereinbefore referred to (Acts 1879, Ch. 79, Sec. 1; Acts 1883, Ch. 181, Sec. 1; Code, §§ 663, 664), wherein it is provided that "all collectors of taxes" on any particular property are constituted Assessors to assess such of that property as may not have been included in the original assessment; but that the conferring of authority to back assess distributable railroad property for any purpose upon those officers was not in the legislative contemplation when that broad provision was made seems manifest, when it is considered that the peculiar and imperative rules laid down in Sec. 3, Ch. 16 (2d Ex. Ses.), Acts 1882 (Code, § 687), for the assessment of such property, are wholly impracticable for such officers. It should not be inferred from the mere generality of the language used that the Legislature intended to take those local functionaries out of their usual fields of labor, and impose upon them the unusual, burdensome, and expensive duty of ascertaining all the facts and performing all the services necessary to a correct valuation of distributable railroad property of every kind and character, wheresoever situated,

whether in this State or elsewhere, and of making apportionment and subapportionments of that valuation, according to mileage, so as to learn the amount to be back assessed by them respectively. Especially would this inference not be indulged, when it is obvious that the Comptroller, whose duty to back assess this class of property for the State is beyond doubt or debate, may certify the requisite facts without any expense or trouble to the counties or municipalities interested therein, and without additional expense to the State, and when it is further considered that each of them would have its proportionate share of the same valuation, if made by the Comptroller, and that there would likely be as many different valuations as there might be different counties and municipalities concerned, if each of them were left to make its own investigation and back assessment.

The assessed value must be apportioned the same in back assessments as in original assessments, and that, too, whether the omission and back assessment be of one single item or kind of "distributable property" or of many items and kinds. In no case can any county or municipality rightly collect taxes on more than its proportionate part of the assessed value, whether that value be of the whole or of a part of the property.

In 1881 the County Trustee of Franklin County, as tax collector thereof, back assessed "thirty-four miles of the Nashville, Chattanooga & St. Louis

Railroad lying in Franklin County'' for county taxes for the years 1875 to 1881, inclusive. The assessments for all the years were held to be bad, the reason assigned for the invalidity of those made for 1875 to 1879, inclusive, being that the Trustee was not in office during those years, and that assigned for the invalidity of those made for 1880 and 1881 being that the same property had been assessed for those years by the railroad tax assessors. That he would have had authority to back assess the property in question for the years he was in office, if it had been omitted from original assessment, seems to have been taken for granted by counsel and by the Court, although nothing is said on the subject, and the question did not arise. *Franklin County* v. *Railroad Company*, 12 Lea 521.

In the course of the opinion in this case the Court said: ''The assessable value for taxation of a railroad track can only be determined by looking to the elements on which the financial condition of the company depends, its traffic, as evidenced by the rolling stock, and gross earnings in connection with its capital stock. No local estimate of the fraction in one county, of a railroad track running through several counties, can be based upon sufficient data to make it reliable, unless, indeed, the local Assessors are furnished with the means of estimating the whole road. It would be guesswork, as the County Trustee fairly concedes his estimate of $40,000 a mile to have been in the case before us, or a vague ap-

proximation, as the County Judge shows his valuation to have been. And it would be a most cumbersome and uselessly expensive and burdensome mode of assessment to give each local board of assessors the power to call for the necessary books, papers, and evidence for a correct general estimate. The most economical and accurate mode is the one adopted by the Legislature in the Acts under consideration." 12 Lea, 539, 540.

Though not directed to that end exactly, this language affords valuable support to our view that the Legislature did not intend to authorize local functionaries to back assess omitted distributable railroad property.

It is true that our holding herein, that a County Trustee has no power to back assess omitted distributable railroad property, even for purposes of county taxation, is seemingly in direct conflict with the holding of this Court in the case of *Chesapeake, Ohio & Southwestern Railroad Co.* v. *Lauderdale County*, reported in 16 Lea at pp. 688–693. The headnote of that case is as follows: "The Trustee of the county is the proper officer, under the Act of 1879, Chapter 79, and subsequent Acts amendatory thereof, to assess for county taxation the property of a railroad company which the State Assessors have omitted; and, upon the company disputing his assessment, the assessment of the Chairman of the County Court will be binding, if made at the proper time and sustained by proof." The railroad there referred to

26—12 P

had been projected from Paducah, Ky., to Memphis, Tenn., so as to run through Lauderdale and other counties of this State. On the tenth of January, 1882, when all kinds of nonexempt property in the State became subject to assessment for taxation for that year, the road had been completed, "in part, at both ends," with "an intermediate unfinished gap," extending through Lauderdale County. Rights of way had been obtained "from a large number of property owners along the line" in that county, "a considerable part of the roadbed" had been graded, and "a few hundred cross-ties scattered through the county." The question was as to the back assessment of the company's property then in Lauderdale County. The Court said: "The railroad assessors omitted to assess the property and franchises of the railroad company in the county of Lauderdale for the year 1882. In December, 1882, the Trustee of the county, who was the collector of county taxes for that year, undertook to supply the omission, and assessed the franchises and property of the Chesapeake, Ohio & Southwestern Railroad Company in Lauderdale County, under the Act of 1879, Chapter 79, and subsequent Acts amendatory thereof, at $130,000. The company disputed the assessment, and had a revaluation before the Chairman of the County Court, who reduced the assessment to $120,000. By the Acts of 1879 and 1883, all collectors of taxes are made assessors of property for taxation which has been omitted, for any cause,

State *v.* Railroad.

to be taxed by the regular Assessors, and the Trustee of a county is the collector of taxes for the county, within the meaning of the Acts. *State* v. *Railroad Co.*, 14 Lea, 56; *Franklin County* v. *Railroad Co.* 12 Lea, 521. And the Act of 1882, Chapter 16 (Spec. Ses.), expressly names him as the proper assessor of omitted property." 16 Lea, 689–692.

The ruling thus made is undoubtedly sound when applied to what is now known as "localized property," but we think it is not so when applied to "distributable property." The distinction was not mentioned in the opinion, however, though the Court, without so saying, may well have thought that mere rights of way, partially graded roadbed and a few hundred cross-ties, although assessed under the general head of "franchises and property," were in reality nothing more than local property, and, as such, subject to local taxation. Certain it is, that neither the County Trustee nor the Chairman of the County Court seems to have regarded himself as dealing with other than local property, and that neither of them put forth any effort to apportion and subapportion his valuation, as each of them unquestionably should have done in back assessing "distributable property."

The sixteenth chapter of the Acts of 1882 (2d Ex. Ses.), which, for the first time, established in this State the two classes of railroad property, though not passed until the twenty-sixth of April, provided, in its first and sixth sections, that the property of

each class should be assessed for that year, and thereafter as therein prescribed.

That part of the latter section referred to in the last sentence quoted above from the opinion of the Court, as expressly naming the County Trustee as the proper assessor of omitted property, relates alone to "localized property," and has no reference whatever to "distributable property." It sustains the point for which it was cited, if the property back assessed was treated as localized, but not so if it was regarded as distributable.

The fact that County Trustees were expressly given authority by the sixth section of chapter 16 (2d Ex. Ses.), Acts 1882, to back assess omitted "localized property" for county taxation, clearly indicates that the Legislature thought such express authority necessary; and the further fact that such authority was there conferred with respect to "localized property" alone, affords strong ground for the inference that it was not intended that they should have the power to back assess "distributable property" at all.

In the case of *Shelby County* v. *Railroad Co.,* 16 Lea, 401, it was ruled that the Trustee of that county had power, in September, 1884, by virtue of Section 1, Chapter 79, Acts of 1879, and Section 1, Chapter 181, Acts of 1883, to back assess omitted railroad property in that county for county taxation for the years 1866 to 1874, inclusive. The character of the property there held to have been

rightfully so assessed is not disclosed in the opinion, but it is fair to infer that the assessments covered all the property of the company situated in Shelby County. The Court states that it was the same property that the Comptroller had back assessed for the same period of time for State taxation, and on which the company had paid to him the State's taxes. 16 Lea, 411. The character of the property, however, bears no important relation to the questions raised in the present case, as the years for which the back assessments were made were all anterior to the establishment of a special and separate system for the taxation of railroads. Prior to the passage of Chapter 78, Acts of 1875, on the twentieth of March of that year, all railroad property in this State was assessable, as other property, under the general assessment laws, each part in the county where situated. For the years 1866 to 1874, inclusive, all nonexempt railroad property situated in Shelby County was subject to assessment, as other local property, by the regular Assessor of the county, and no apportionment or subapportionment of any part of the valuation fixed by him was required to be made; and, when the County Trustee came, in 1884, to back assess that property for those years, it was his duty to pursue the same course that the original Assessor should have pursued, and make the same assessments that he should have made, without reference to special statutes subsequently enacted for the taxation of railroad property. So, when this

Court was called upon to say whether or not those back assessments had been validly made, it applied the test of the general laws upon the subject of assessment and back assessment, and not the statutes relating specially to the taxation of railroads. Consequently, the case last cited is not authority for the contention that County Trustees may back assess omitted distributable railroad property for county taxation for the years 1892, 1893, 1894. What is there said has no application to back assessments of railroad property for years subsequent to the passage of the special Act of 1875, Chapter 78, and is, therefore, entirely irrelevant to the back assessments involved in this case. It was there complained by the railroad company that the method prescribed by the special statutes for the original assessment of railroad property had not been pursued in making the back assessments in question. To that objection the Court replied: "But the taxes for the years in controversy antedated the first of these Acts, and the property of the company, as we have expressly held, was open to assessment under the general revenue laws of those years. *Railroad Co.* v. *State*, 8 Heis., 663; *State* v. *Railroad Company*, 14 Lea, 56, 63." 16 Lea, 410.

Section 26, Chapter 96, Acts of 1889, provides: "That should it at any time after the assessments have been made, come to the knowledge of the Chairman or Judge of the County Court, the Clerk of the County Court, the County Trustee, Sheriff,

or other officer or person of any county in this State, that any person, company, firm, or corporation in said county has not been assessed as contemplated by the provisions of this Act, or has been assessed, or has paid tax on an inadequate amount, it shall be the duty of said Chairman or Judge, Clerk, Trustee, Sheriff, or other officer or person, on motion of the attorney appointed by the Comptroller under Section 65 of this Act, to cite said person, company, firm, or corporation, their agent, attorney, or representative, to appear before the Trustee, or County Court Clerk in case of merchants' taxes, for the purpose of being assessed according to law; and said Trustee, or County Court Clerk in case of merchants' taxes, is hereby authorized and empowered to make the proper assessment against such person, firm, or corporation," etc.

This provision did not authorize the back assessments made in this cause, the bonds back assessed being distributable, and not localized railroad property. It relates alone to the back assessment and reassessment of the different kinds of property whose original assessment is provided for in other parts of the Act, and confers the power to back assess, or reassess, such of those kinds of property only as may not have been assessed originally as contemplated by the other provisions of the Act, or as may have been inadequately assessed. The original assessment of distributable railroad property is not contemplated by those other provisions of the Act, and therefore

its back assessment is not authorized and devolved upon the Trustee by the section quoted. The Act is but a general assessment Act, intended in no way to affect the special statutes for the taxation of distributable railroad property.

It is true that the back assessment considered and upheld by this Court in the late case of *Grundy County* v. *Tennessee Coal, Iron, and Railroad Company,* 94 Tenn., 295, was made by a Trustee on motion of a back tax attorney, and that it included some items of property which, if belonging to a railroad company, would constitute parts of its distributable property; but, in reality, the assessment was not made against, and the property did not belong to, a railroad company. The Tennessee Coal, Iron, and Railroad Company was there regarded, as it in fact was, as a mining and manufacturing company, and not as a railroad company.

The back assessments under consideration in this cause are clearly shown by their own recitals, and by the allegations of the bill, to have been made against the defendant herein as a railroad company, and not otherwise.

The provisions of the present assessment law (Ch. 120, Acts 1895) are not involved, and need not be considered.

Affirmed.