WALLACE *v.* WILLIAMS *et al.*

(*Jackson.* April Term, 1902.)

1. **LEASE.** Construction of. Landlord's agreement with one tenant not to re-let part of building to rival tenant complied with by refusal to renew lease of such tenant and bona fide suit to oust him. Case in judgment.

Complainant, being engaged in the saloon business in one room of a building owned by the defendants, paid them in August, 1899, six hundred dollars in consideration of which defendants agreed not to renew the lease to rival saloon keeper, of another part of the same building, when said lease expired. When the lease of the rival tenant expired it was extended about one month by agreement of all parties, after which defendants attempted by suit to evict such third party; and while this action was pending and on November 14, 1899, complainant and defendants executed a contract giving complainant a new lease at increased rent, and acknowledging defendant's right to the six hundred dollars paid as above stated, and defendants agreed to prosecute the suit to final determination. In April, 1900, the rival tenant still in possession made a proposition that if he were allowed to remain until September of that year, he would withdraw his defense to the suit and vacate the premises on September 1; but this proposition defendants refused, without consulting or advising complainant thereof, and the suit was not settled until May 1, 1901. Complainant sued to recover said sum of six hundred dollars as damages for the alleged breach of the agreement upon which said sum was paid defendants.

*Held:* That by their agreement the defendants were only bound not to renew their lease to the rival tenant, and, as there was

Wallace v. Williams.

no evidence of want of good faith in their prosecution of the suit to evict such tenant, defendants had not breached their agreement and were not liable to complainant.

## FROM SHELBY.

Appeal from Chancery Court of Shelby County.— F. H. HEISKELL, Chancellor.

R. M. HEATH, for Wallace.

TURLEY & TURLEY, for Williams et al.

MR. JUSTICE WILKES delivered the opinion of the Court.

The original bill in this case is filed to recover $600 paid by complainant to defendants upon a contract entered into by the defendants, at complainant's request, not to re-let or re-lease certain premises to Smith & Allen, or any other liquor dealer. An amended bill was filed, which sought to enlarge the ground for recovery by reason of a lease of adjoining premises to complainant at an increased rental in consideration that the contract was carried out to vacate the first named premises. The chancellor upon the hearing gave complainant judg-

ment for $320, and both parties have appealed; complainant claiming that he is entitled to more, and defendants that he is entitled to nothing.

The facts necessary to be stated are that defendants owned the premises called the "Kit Williams Block," in Memphis. Complainant was occupying room No. 43, and Smith & Allen room No. 45, in the building, and both were operating saloons. Smith & Allen's lease ran to August 31, 1899, and complainant's to September 1, 1900. Defendants, at complainant's solicitation, agreed not to re-let the premises No. 45 to Smith & Allen after their lease expired, nor to any other liquor dealers; and complainant, for the concession, paid defendants $600 on the 24th of August, 1899, or about a week before the lease to Smith & Allen expired. They notified Smith & Allen of their determination, and that firm protested that they should have more time to vacate and find another location; and all parties thereupon agreed that the time should be extended to October 1, 1899, before Smith & Allen should be compelled to vacate. Smith & Allen on the first of October refused to vacate, and an action of forcible entry and detainer was brought by defendants to eject them.

In the meantime complainant was attempting to get a renewal of his lease, which defendants declined to consider until later, when the lease would be about to expire. On November 14, 1899, complainant and defendants had a conference, in which the whole situation was gone over. Complainant insisted that Smith & Allen

had not been evicted, while defendants claimed that they were doing all they could to effect that end, but that, as a matter of fact, their agreement with complainant was that they would not re-lease, and not that they would evict. The result of the conference was that defendants agreed to give complainant a new lease, running to September 1, 1903, at a rental of $140 per month, instead of $100, as under the existing lease, and a paper was executed as follows: "This agreement further evidences, that Wallace and the Williamses acknowledge that all past debts, liabilities, and engagements are satisfactorily and mutually extinguished, including the $600 paid by Wallace to the Williamses about August 24, 1899; the right of Jno. S. & C. H. Williams to the $600 being hereby expressly admitted. The Williamses hereby further agree to prosecute the present suit of forcible entry and detainer against Smith & Allen now pending in the first circuit court of Shelby county to a final determination in the court of final resort."

This agreement, made on the night of the 14th of November, was signed by the parties the next day in duplicate. The forcible entry and detainer suit was prosecuted by defendants, but was appealed to this court, and not finally decided until May, 1901, and until that date Smith & Allen remained in possession and operated their business. In the meantime, about April, 1900, Smith & Allen made a proposition to defendants to no longer keep up their defense of the suit, if they would allow them to remain in possession to September 1, 1900. It

appears that defendants did not notify complainant of this proposition, but rejected it, and continued to prosecute their suit, but agreed to consider any proposition Smith & Allen would make to vacate at once. Now the complainant says that the substance of his contract with defendants was that they would get Smith & Allen out of the premises by September 1, 1899, and failed to do so; that when he entered into the new lease it was with the understanding that Smith & Allen must vacate in a few days, and the increased rental was based upon the understanding that the $600 was paid and the rental increased to $140 on the idea and agreement that the premises would be vacated, and no liquor would be sold in No. 45 in competition with him, and, at any rate, that the defendants would have accepted the proposition of Simth & Allen to vacate on September 1, 1900, if advised of it.

We have examined the record carefully upon the several contentions, and find them against complainant. The original agreement, made August 24, 1899, as shown by the record, was simply, in effect, that defendants would not re-lease to Smith & Allen after the expiration of their existing lease. The time was extended by consent of all parties to September 1, 1899. Smith & Allen then refused to vacate, and defendants in good faith sought to eject them. In the meantime, November 14, 1899, complainant agreed with the defendants to pay them $140 per month, instead of $100, as fixed by the existing lease, and also that the defendants would retain the $600 al-

ready paid them under the contract of August 24th. We can not doubt but that both the $600 and the increased rental of $140 per month were based upon the idea and belief that complainant would be relieved from the competition of Smith & Allen, or any one else, in the liquor business, in No. 45; but the contract was not conditioned upon its being done, and defendants did not contract to do so, in the sense that their failure to effect the removal would release the complainant from his contract, but only to use the process of the law to effect it. In other words, defendants expected to oust Smith & Allen, and not to lease to them or anyone else, but they did not base their contract with complainant upon any promise to eject them.

We think it is true that the defendants might very properly have made known to complainant the proposition made by Smith & Allen to vacate at a future time, and to abandon their appeal, and allow judgment to go for possession; but they were under no legal obligation to do so, and they had no assurance that complainant would agree to such an arrangement. On the contrary, they had bound themselves by contract with complainant to eject them as soon as it could be done by legal process, and to prosecute the suit then pending for that purpose; and they were under no obligation, and certainly no legal or binding obligation, to do more. We can not see that they acted with any want of good faith. When approached with the proposition to compromise on a judgment of ejection on September 1, they declined

Wallace v. Williams.

to accede to it, but they expressed a willingness to consider any proposition that might be made to vacate at once.   No such proposition was made, and we can not say that it was bad faith to reject a promise to vacate in the future, after they had been so long baffled in their efforts, without any good ground for delay.   Entertaining this view of the case, it results that the decree of the chancellor was erroneous in granting any relief to complainant; and the decree granting him a judgment is reversed, and the suit is dismissed, at his cost.