Wagner v. Brady.

WAGNER *v.* BRADY *et al.*

(*Knoxville.* September Term, 1914.)

1. PLEADING. Construction. "Etc."

The character "etc.," as used in a bill by a company's doctor to recover money taken out of the wages of employees, alleging that the money was collected on representations that the funds collected would go to the company's doctor and for his benefit in the way of purchasing medicines, providing hospital equip- ment, etc., imports every agency, devise, construction, and measure tending to preserve the health of employees or to alleviate or cure their suffering in case of accidental injury or illness. (*Post, pp.* 555-557.)

Cases cited and approved: In re Schouler, 134 Mass., 426; High Court I. O. F. v. Schweitzer, 70 Ill. App., 139; Garvin v. State, 81 Tenn., 169.

2. PLEADING. Amendment. Construction against repugnancy.

An amendment to a pleading will not be held repugnant to the original averment, where a construction can be given which will avoid it. (*Post, pp.* 557-560.)

Acts cited and construed: Acts 1889, ch. 259.

3. PHYSICIANS AND SURGEONS. Compensation. Benefit fund. Right to recover. Evidence.

In an action by a company's doctor to recover amounts held out of the wages of employees for his alleged benefit under Acts 1889, ch. 259, making it unlawful to withhold a portion of wages for the avowed purpose of paying the salary of the company's doctor without consent of the employee and that the whole amount of such wages so withheld shall be paid to the com- pany's doctor, evidence *held* insufficient to show that any fund was withheld for the avowed purpose of paying the company's

Wagner v. Brady.

doctor rather than maintaining hospitals, nurses, etc., or that
any money was left of the fund. (*Post, pp.* 560-565.)

Acts cited and construed: Acts 1889, ch. 259.

FROM HAMILTON.

Appeal from the Chancery Court of Hamilton
County.—T. M. McCONNELL, Judge.

WILLIAMS & LANCASTER, for appellants.

JOE V. WILLIAMS and JOSEPH W. WAGNER, for appellee.

MR. JUSTICE BUCHANAN delivered the opinion of the
Court.

By his original bill, Dr. M. M. Wagner sought a decree against Brady, as a nonresident individual, for
certain sums of money collected by Brady through his
agents from laborers and employees engaged in the
construction of a lock and dam at Guild, in Marion
county, Tenn., during the period of time from December 28, 1908, to the latter part of April, 1911,
which sums the bill avers were collected out of the
wages of said laborers and employees upon "representations made to them that the funds thus collected
would go to the company doctor and for their benefit in
the way of purchasing medicines, providing hospital
equipment, etc."

The character "etc.," above quoted, is said by the
lexicographer, Mr. Webster, to be equivalent to the

phrase "others of the same kind, and the rest, and so on." It is equivalent to "et cetera" and the character "&c." "Etc." has been held to import other purposes of a like character to those which have been named. *In re Schouler,* 134 Mass., 426; *High Court I. O. F.* v. *Schweitzer,* 70 Ill. App., 139; and our own case, *Garvin* v. *State,* 13 Lea (81 Tenn.), 169, and in this case our court rejected the argument that the character "etc." was a mere abbreviation and meant nothing, but said:

"It is thoroughly incorporated into our language, is defined by our lexicographers, and is a perfect English word in almost common use."

In the case last cited, the character or word "etc." was in the last word in the caption or title of an act and was held to embrace five other kinds of games not mentioned in the caption but mentioned in the body of the act.

So we think the word "etc.," as used at the end of the quotation from the bill last above set out, must be held to import every agency, device, construction, and measure tending to preserve and promote the health of the laborers and employees or to alleviate or cure their suffering in case of accidental injury or illness.

The bill also sought a decree against "Jacobs & Davies, Incorporated," averred to be a foreign corporation, "for all sums so collected by them from the time said Jacobs & Davies, Incorporated, took charge of said work, until the latter part of April, 1911, when complainant severed his connection with defendants,

Wagner v. Brady.

less the said sums which it may be shown were actually and necessarily expended as aforesaid.'' In another part of the bill it avers that Jacobs & Davies took charge of the work for Brady on July 1, 1910. So it is that the bill sets up a several demand against Brady for the period of time from December 28, 1908, to the time when he ceased to be ''company doctor'' in the latter part of April, 1911, and a joint and several demand against Brady and his agents, Jacob & Davies, Incorporated, from July 1, 1910, to the latter part of April, 1911.

To the foregoing bill, the defendants interposed a joint and several demurrer, the grounds of which, under the view we have of the case, need not be noted, except the fourth ground, which the chancellor sustained, and which was in substance that the bill did not allege whether the sums collected and retained were collected and retained with or without the full consent of said employees and laborers. The action of the chancellor was met by an application to amend, which was allowed, and the bill was accordingly amended to meet the fourth ground of demurrer. The chancellor also allowed the bill to be amended so as to aver that said employees were induced to and did pay same over to defendants for the express purpose of compensating complainant as defendant's said company doctor.

The amendment above quoted will not be allowed to have the effect of striking from the original bill the averments hereinbefore quoted as to the representa-

tion made to the employees and laborers under which the funds were collected, because the complainant did not ask leave to strike out that portion of the original bill, and such leave was not granted. The original bill was sworn to, and its averments must stand as binding upon the complainant. The amendment is susceptible of a construction which will save it from being held repugnant to the original averment, and that construction will be given it.

The complainant asked and was granted leave to amend his bill by an averment that:

"Defendants, in thus retaining and appropriating said funds for their own use and benefit, and in refusing to pay the same over to complainant, are violating chapter 259 of the Acts of 1889."

This amendment was not improper, but wholly unnecessary, inasmuch as the complainant had already averred, in substance, in his original bill that the retention by the defendants of the sums of money collected was in violation of the statute laws of the State.

Upon the coming in of the foregoing amendments, the defendants demurred to the amended bill, raising divers questions in respect of the constitutionality of chapter 259 of the Acts of 1889. In our view of the case, it is not necessary to go into the questions raised in this demurrer. The chancellor overruled the demurrer, and the next step in the cause was the suggestion of the death of the defendant Anthony N. Brady, which being admitted, the cause was revived against the executors of his estate, these being the

Central Trust Company of New York, along with N. F. Brady, and J. C. Brady. Whereupon the original defendants, Jacobs & Davies, Incorporated, and the executors above named for their testator's estate, filed their joint and separate answer, taking issue upon all the material averments of the bill, whereupon proof was taken in the cause.

Along with their answer, defendants filed statements taken from their books covering the period of time for which complainant claims, to wit, the years 1909, 1910, and three and one-half months in 1911. Said statements show that defendant Brady collected from his laborers and employees, during the time aforesaid, the sum of $24,987.30. The statements also show that there was expended by Brady through his agents during said period of time for camp sanitation, hospital and doctors expense, the sum of $30,699.55. The expenditures are thus shown to have exceeded the receipts by the sum of $5,712.25, and the answer of defendants avers, in substance, that, if to the above deficit there should be added what was expended for water supply and sewerage account, the sum would amount to more than $25,000.

There is a stipulation of counsel to the effect that the statements filed with the answer of the defendants correctly show the amounts collected and expended for the purposes shown in said statements. We have examined the statements, and we think the purposes for which they show funds expended fall within the purposes for which the funds were reserved under the

averments of the complainant's bill, as we construe that bill, and under the averments of the answer, and under the preponderance of the proof in this cause.

It is clear from the proof, and the complainant expressly admits in his evidence, that he never contracted with the defendant Brady for any part of the sums so collected from employees and laborers. The proof does not disclose that the sums, or any part thereof, were collected under any written or verbal contract between Brady and the employees or laborers. Each laborer or employee, when employed upon the work, was advised of the scale of wages per week or per month which would be paid for such services, and upon this statement the work of each of them was done, and from the wages due each laborer and employee a deduction was made at the rate of $1 per month for those paid by the month or twenty-five cents per week for those paid by the week or biweekly, and the sum was withheld by the paymaster; and these several amounts, so acquired by deduction from the wages due each laborer, accumulated and finally amounted to the sum already stated for the period of time during which the complainant was employed at the camp. When any employee or laborer, on pay day, would make complaint that he had not received full pay, the explanation would generally be made by those charged with the duty of paying that the amount retain was for "doctor" or "company doctor" or "hospital fund," or the like. There is no accurate evidence from which we can draw any conclusion as to how many of the laborers or em-

ployees ever so objected, nor how many of them were ever so answered. We think it quite probable, from the number of employees and the large scale on which the hospital was conducted and the health of the employees conserved, that they generally understood that the amount accumulated by deduction from their wages was used for the purposes averred in the bill; and therefore it is probable that, comparatively speaking the objections and inquiries from laborers on pay day were few in number. But, looking at the whole proof, it is utterly impossible to say what proportion of the fund so accumulated was withheld with any avowal whatsoever made by Brady in respect of the use to which the amount retained from each employee would be put. Witnesses appear on behalf of complainant who undertake to show a general understanding that the fund was for the company doctor. But an equal number of witnesses on behalf of defendants testify in substance that the knowledge among the employees and laborers was general that the fund so accumulated was to be applied "for the health of the men and their benefit, and for the salaries of the doctors, the nurses and assistants, and the operation of the hospital, to provide medicine for the sick and injured, and to maintain the health and sanitary condition of the camp."

Speaking to this subject, one of the witnesses of defendant answered as follows:

"Well, I expect there was different understandings about that. Some narrow-minded men thought it was being held for the doctor, and maybe other men who

130 Tenn. 36

could see further would say it was to pay off the doctor bills, hospital bills, and the general upkeep of the camp.''

Another witness was asked:

''What was the purpose for which this fund was held out of your wages?''

He answered:

''Well, the purpose was for hospital expenses; otherwise, I suppose you might call it sanitary expenses for the benefit of the health of the employees down there. I would call it hospital expenses, or rather hospital fund.''

And there was much other evidence to the same effect on behalf of the defendants, not only as to the understanding of the men as to what the deduction from their particular wages was to be used for, but also as to the general understanding among the men.

A stipulation of counsel appears wherein counsel for complainant agrees that any number of witnesses might be procured on behalf of defendants from among their former employees who would testify in substance the same way as the witnesses to whom we have referred above. This agreement, construed literally, would, of course, cover all of defendants' employees.

After all the proof was in, the chancellor decreed in favor of the complainant and ordered an account to be taken and stated, the effect of which would be to deprive defendants in large measure of their proper credits under the law, and under the preponderance of the

evidence, as we see it in this cause. From this decree, defendants appealed to this court.

The complainant relies on no contract right to any interest in this fund, but relies wholly upon the provisions of chapter 259 of the Acts of 1889, and must make his case out by a preponderance of all the proof under the terms of that act. In order to fall within its terms, he must show that a specific fund is in the hands of the defendants, withheld from the wages of employees and laborers, for the avowed purpose of paying his salary as "company doctor;" and proof of a general understanding among the employees and laborers as to the avowed purpose for which the fund was withheld is not sufficient under the statute. In the only cases where recoveries under this statute have been approved by this court, there was proof, not only as to the amount of the fund, but of the fact that it was withheld for the avowed purpose expressed in the statute. In *Shepherd* v. *La Follette Coal & Iron Co.*, decided by this court on December 7, 1907, and in *Wright* v. *Same Company*, September term, 1912, the specific date when the company commenced to collect from its single employees fifty cents and from its married employees $1 each per month was fixed, and the fund there involved was collected under written contracts with the employees, providing, among other things, that each employee "hereby agrees that his account at the beginning of each month shall be charged with the sum of $————, the same to be credited to the account of the regularly employed and designated com-

pany physician and surgeon, whose services are to be rendered to him and his family, when reasonably called, within the period of the month for which said charge is made." And upon this state of facts, this court held:

"These fees having been paid to the company for the express purpose of being turned over to the company doctor, and the company having received them under such written directions, it must be held to hold said fees in trust for the complainant."

In the *Shepherd Case,* supra, this court said:

"The whole purpose and scope of the act of 1889 was to prevent corporations from retaining money from their employees for the ostensible purpose of paying the salary of the company doctor without the full consent of the employees of the company. This act impliedly authorizes the retention of such wages when full consent has been given by the employee, as the court of chancery appeals finds was the case in the present instance."

It is also significant that in the *Shepherd Case* the company doctor was not allowed to recover the full amount which was collected under the aforesaid written contracts between the employees and the company. There the full amount-collected, as found by the court, was $35,603.67, out of which the company had disbursed salaries due its physicians, nurse hire, the expense of maintaining the hospital, and for all medicines and medical instruments purchased by it for the benefit of its employees; and, after paying all these dis-

bursements, the sum of $15,612.70 remained, and that amount alone was held to be subject to claim by the company doctor.

The only avowed purpose established by the proof in this cause, as that accompanying the withholding of the fund, is that purpose which is avowed in the averments of the bill of complaint. As we have construed the averments of that bill, and accepting that as the avowed purpose for which the fund in this cause was collected, no balance in the hands of these defendants exists; all of the fund and much more was expended. The complainant admits that he received from the company full pay for all that he ever contracted with the company to receive from it.

Upon the whole case, it is our conclusion that, according to the preponderance of the proof in the record, complainant has failed to show the existence of a fund in which he has or ever had any interest under the act of 1889. The proof does not show, within the meaning of that act, that the fund which did exist was withheld under an avowed purpose which would bring it within the terms of that act as a fund held in trust for complainant. We have no warrant of law to expand the terms of that act; we can only apply the act when a case is within its terms. But, even if it could be held that the fund was within the terms of that act, the evidence very greatly preponderates against the insistence of the complainant that any balance of the fund remains in the hands of the defendants.

It results that the decree appealed from must be reversed, and the bill dismissed.