GEORGE S. FUNK, Plaintiff in Error, v. W. C. WELDEN, Defendant in Error.—292 S. W. (2d) 207.

Western Division, Jackson. September 17, 1953.

Petition for Certiorari denied by Supreme Court, December 11, 1953.

Rehearing denied on Petition for Certiorari, March 3, 1954.

426

Henry M. Crymes and William M. Hall, Memphis, for plaintiff in error.

Frank A. Logan, Louisville, Ky., and Davis & Davis, Memphis, for defendant in error.

. AVERY, P. J., (Western Section). This is a suit brought by the defendant-in-error, W. C. Welden, against George S. Funk, plaintiff-in-error in the Circuit Court of Shelby County, seeking to recover damages, in the amount of $75,000 for personal injuries. Parties will be hereinafter designated as in the Court below. The plaintiff contends that such personal injuries were received by him while he was helping to unload a dragline belonging to the

defendant and while he was employed by defendant. The parties both lived in Memphis, Tennessee, but the accident occurred in Muhlenburg County, Kentucky. Prior to the date of the accident the plaintiff had been employed by the defendant in the State of Mississippi, as a dragline operator.

The case was tried to a jury in Division 4 of the Circuit Court of Shelby County, Honorable Floyd M. Henderson, Judge. On March 28 the jury returned verdict in favor of the plaintiff, W. C. Welden, fixed the damage at $30,-000 and judgment was rendered according to the verdict. Motion for new trial was seasonably made, overruled, appeal in error prayed, granted, perfected to this court, and errors assigned.

The testimony of witnesses was taken in shorthand, transcribed and preserved or is duly in the record by stipulation and deposition. On March 27, during the hearing, plaintiff moved the Court to be permitted to amend the declaration by adding after the words "position" in the 4th line, paragraph 3, page 2 of his declaration the following sentence:

"Said overhead wires were over the cars on which the machine was loaded, or in such close proximity that said machine could not be unloaded with the A-frame in an upright position"

This amendment was allowed over objection of defendant.

The defendant entered into a contract with Smith and Smith, of which R. D. Smith of Greenville, Muhlenburg County, Kentucky, was a senior partner, the terms of which are not very specific, so far as this record is concerned, by which contract the defendant was to furnish

the dragline and other machinery to remove some estimated 450,000 cubic yards of overburden from strip coal mines for said Company at an agreed price per cubic yard. The equipment or machinery to be used in the operation including a dragline with a boom 70 feet long was shipped on two flat cars from Clarksdale, Mississippi, to Drakesboro, Kentucky. Bill of lading was from the defendant to Smith and Smith.

After the contract was executed the defendant learned the persons who worked in such mining operation in Kentucky would have to be members of the United Mine Workers Union, with which Union, Smith and Smith had a contract for labor in their mining operations in Kentucky. The defendant then negotiated some agreement with Smith and Smith by which the persons operating the involved equipment were to be paid the regular Union contract scale wages by Smith and Smith and that the amount of wages so paid were to be deducted from the original contract consideration between Smith and Smith and the defendant, George S. Funk, and the balance remaining due the defendant be paid to him direct. Smith and Smith were qualified employers under the provisions of the Statutes of the State of Kentucky with respect to Workmen's Compensation. The defendant was not so qualified.

Plaintiff and some other members of the crew who were to operate the equipment, and the plaintiff's wife, preceded the equipment to Kentucky, reported to Smith and Smith that the machinery and equipment had been shipped, built a tool house, and in a few days the equipment arrived by rail at the village of Drakesboro.

It is insisted by plaintiff that he was directed by the defendant to report to Smith and Smith in Kentucky and take his orders from them. That R. D. Smith directed the unloading of the machinery and equipment, and while plaintiff and others were unloading the equipment as directed by R. D. Smith, the senior member of the firm, plaintiff was seriously injured, which injuries required removal of several inches of his intestines, two operations, suffering, etc., including medical expense and hospital bills.

The declaration is in one count and after setting out the necessary preliminary averments descriptive of the machinery and equipment and that the dragline occupied two flat cars, the length of the boom, making such necessary; that it was shipped with the boom and A-frame down and that the cars were spotted on a switch or spur track at the direction of the said R. D. Smith and that:

"there were at that time and place high tension wires overhead which would not permit the clearance of the dragline with the A-frame in an upright position"

and proceeds to charge the negligence of the defendant to be that:

"The A-frame was at the time lowered, or in a down position, and the defendant, through his said agent, R. D. Smith, in charge of the unloading of said dragline, in disregard of his duty to the plaintiff, negligently adopted and put into operation a hazardous, dangerous and unsafe method of unloading said dragline by peremptorily directing the plaintiff to raise the derrick or boom, off of the flat car so as to permit the movement of the dragline, with the power supplied by the motor on the dragline without re-

lying upon the added support of the A-frame, and, in fact, while the A-frame was still in a lowered or down position.''

The declaration further states that in obedience to said orders of the defendant's agents under whom he was working at the time, as a servant and employee of the defendant, and without realizing the danger to him by obeying the orders of defendant's agents, undertook to do as directed and that when the weight of the end of the boom next to the dragline tractor was thrown against the coupling, the bolt or pinion which supported the boom or A-frame broke, caused the A-frame to be kicked back and shoved around striking the plaintiff in the abdomen. Following this explanation there is the further averment:

"Plaintiff alleges that the defendant acting by and through his agent, R. D. Smith, was careless and negligent in so directing the handling of the machinery and that as the direct and proximate result of such negligence, plaintiff was crushed, torn, mashed, mangled and bruised both internally and externally.''

That he required immediate hospitalization, was permanently injured and expended $1,300 for hospital bills, $500 for medical attention, $350 for nurses' hire, and for medicine and transportaion, etc., $1,000. He was 44 years of age and was at the time earning $115 per week or $5,700 a year. Declaration also alleges that the defendant, while he had a right to operate under the Workmen's Compensation Law of Kentucky, KRS 342.001 et seq., was not so operating, but he had elected so not to operate and that because of this fact defenses of contributory negligence, negligence of fellow servant, and assumed risk were not available to the defendant.

The pleas are: (a) not guilty, (b) that defendant did not direct plaintiff to report to Smith and unload the dragline in accordance with his orders, that Smith was not his agent and had no authority to supervise the unloading or give orders with respect thereto as defendant's agent, (c) that the plaintiff was at the time of his injury employed by Smith and Smith of Greenville, Kentucky and not by defendant and that Smith and Smith were operating under the Workmen's Compensation Law of Kentucky and that the right of action, if any, the plaintiff had was against Smith and Smith and their insurance carriers and (d) that if the defendant was in fact and law operating in Kentucky he denies that he had elected not to operate under the Workmen's Compensation Law of Kentucky at the time of defendant's injury.

Defendant Funk moved for directed verdict at conclusion of plaintiff's proof and the motion was denied. Again at the conclusion of all the proof by both sides motion was renewed and again denied. Exceptions were seasonably preserved.

The first error assigned is:

"The Court erred in denying defendant's motion for directed verdict in his favor at the close of plaintiff's proof and in denying the motion for directed verdict renewed and made on conclusion of all the proof in the case."

At the conclusion of the plaintiff's proof, motion made by defendant was stated by Mr. Hall as follows:

"If your honor please, I now desire on behalf of the defendant George S. Funk to move the Court to direct a verdict for the defendant on the grounds

that there is no material evidence to warrant or support a verdict in favor of the plaintiff; and second, there is a variance between the allegations of the declaration and the evidence which the plaintiff has introduced.''

At the conclusion of all the testimony in the case the motion for directed verdict by Mr. Hall, in favor of his client Funk was as follows:

''* * * On behalf of the defendant George S. Funk, I move that the Court direct the verdict in favor of Funk, the defendant on the following grounds:

''1st. That there is variance between the allegations of the original declaration and the allegations brought into the original declaration by him; variance between those allegations and the proof that plaintiff has made.

''2nd. That there is no material or substantial evidence to warrant a verdict or to support a verdict against the defendant.''

The Court, acting on the first motion, among other very pertinent statements said:

''In passing on a motion for a directed verdict, the Court must view the plaintiff's evidence in its most favorable light, by including any and all inferences that might be drawn therefrom that supports the plaintiff's theory.''

There is no necessity to cite authorities for the correctness of that statement. The plaintiff had testified that defendant had said to him while he was in Mississippi working for defendant just prior to the date of his injury:

"* * * and he told me, 'Welden, if you will go and look after my interest up there you will be working for me' but he said he was going to make arrangements with Smith and Smith to make my pay rolls to keep from setting up an office up there, and deduct it out of my work every month.''

He further testified that he went to Greenville, Kentucky:

"* * * because Mr. Funk told me to go up there and with this machine to do this job for these people and report to Smith and Smith, and I would take my instructions from Smith and Smith. That is, why I went.''

An affidavit had been introduced made by defendant in the case which had been filed in Muhlenburg Circuit Court of Kentucky, supporting a successful motion to quash the summons, which case was between the same parties and about the same matter, and in that affidavit Funk had practically admitted the employment of Welden by him at the time of the injury, if not in express language, certainly from his statement in that affidavit the inference that Welden was working for him can be drawn.

### Plaintiff's Exhibit B.

One William Raymond Clowney testified he had worked one day for Mr. Funk in Mississippi and that he was employed by Funk to work for him in Kentucky at the time Welden was injured. Clowney stated:

"He (meaning Welden) ask me did I want to go and I said yes and he said I would have to see Mr. Funk first and I met him down the road where I had to walk back to and I talked to him about a job and he hired me.

"He (meaning Funk) told me we would work under Smith and Smith up there on account of he didn't want to set up an office up there, and they would pay us up there and would deduct it from his pay."

Again on cross-examination Clowney speaking with reference to Mr. Funk, and in answering the following question replied as follows:

"Q. He hired you to do some work in Mississippi? A. No sir; he hired me for the Kentucky job and I ask him did he want to try me out, and he said that wasn't necessary, and that was all."

Clowney also testified that on the day Welden was hurt he heard the conversation between Smith and Welden and his statements are to the effect that Smith was directing Welden how to unload the equipment. That is the substance of his statement in several places in the record.

There are also statements in the record by the plaintiff and other witnesses in chief to the effect that some wires were "overhead" meaning that they were so close to the point where the dragline was being unloaded that the unloading process could not be done with the A-frame up. Wilder H. Davis had stated that he was employed on this job in Kentucky, was there when Welden was hurt and that,

"I was working for Mr. George Funk."

That he introduced a drawing Exhibit "D" to his testimony and explained the location of the wires, etc., in relationship to the railroad and the road.

He also testified that he worked up there on that job 3 or 4 months after Welden was hurt and that Mr. Funk

was on the job several times. He stated that a man named Share Cropper Smith came on the job after Welden was hurt and that, "Mr. Funk sent him up there to take Mr. Welden's place."

He also stated that this man Share Cropper Smith discharged him (Wilder H. Davis) from that job. He said that Share Cropper Smith had no relationship to the firm of Smith and Smith and that Smith and Smith had nothing to do with his (Davis') discharge. He assigned as his reason for knowing that Smith and Smith had nothing to do with his discharge that,

"I was in Mr. Smith's office the following morning and he seemed to know nothing about it. That is what he told me."

There was much testimony about the different documents wits respect to withholding income tax, Workmen's Compensation, Taft-Hartley Law requirements signed by Welden. He explained that his reason for so signing that he did so in accord with the instructions of both Mr. Funk and Smith and Smith.

Argument on the motion followed and without quoting further from the record the trial Court aptly, properly and fairly made the following statement:

"Now, with reference to the first proposition, that there is a fatal variance, the declaration originally alleged that there were overhead wires or wires overhead of the machine which prevented the raising of the A-frame. During the course of the trial there was testimony to the effect that the wires were not immediately overhead the machine but were in such close proximity that the machine could not be unload-

ed with the A-frame in its upright position. Counsel applied for relief to amend by alleging that the wires were either overhead this machine and cars or in such close proximity that the machine could not be unloaded. They first wanted to include the word 'move'. Now, I was of the opinion that was proper trial amendment and there is testimony here to the effect that the wires were either overhead or in such close proximity that the machine could not be unloaded from the cars with the A-frame in the upright position. (Here a statement was injected by Mr. Hall and the Court continued his statement as follows:) Well, I'm of the opinion that the amendment as allowed would permit proof by the plaintiff to the effect it would either prevent the raising of the A-frame or prevent the unloading of the machine with the A-frame in the upright position, and I don't believe that constitutes a fatal variance. Now, with reference to your question as to whether Funk was the employer of the plaintiff or Smith and Smith, now, there is testimony both ways. Now, Mr. Funk, as I recall his testimony, practically admitted that in so far as the machine itself was concerned, he expected Mr. Welden to look after that machine in his Funk's interest. So, I am of the opinion that that creates an issue of fact for the jury. Now, you have one other ground, namely, that Welden's own negligence in standing on the tread, I believe you referred to, was the sole cause of his injuries. Of course, if you had available to you the defense of contributory negligence or assumption of risk, then that would be another situation here, but I am of the opinion that the cause of whether or not the plaintiff's standing on the tread instead of placing himself

in the cab is the sole cause of his injuries is also a question of fact for the jury. In other words, I think it is for the jury to say whether or not the alleged negligence of Smith in giving the orders, if he so gave them, to remove this machine in this manner was the direct and proximate cause, or whether Welden's standing on the tread was the sole and proximate cause. I intend to charge the jury, of course, on that.''

It is proper to say just here that the Court did so charge the jury in a very pertinent, correct and definite manner, with words and sentences so clear, cogent, and easily understood as to every fact necessary to be proven by a preponderance of the proof, before plaintiff could recover any amount of damages that it could not confuse the jurors or be misunderstood.

Defendant's second assignment of error attacks the actions of the Court in allowing the plaintiff to amend the declaration in the way and manner hereinbefore quoted in this opinion.

The original declaration, as hereinbefore stated contained the following statement:

"There were at that time and place high tension wires overhead which would not permit clearance of the dragline with the A-frame in an upright position.''

The amendment was that:

"Said overhead wires were over the cars on which the machine was loaded, or in such close proximity that said machine could not be unloaded with A-frame in an upright position.''

We think the averment in the original declaration, even without the amendment, would have permitted, without any violence whatever to the rules of evidence, the plaintiff to have proven that the wires were in such close proximity to the location of the loaded dragline as to prevent it being safely unloaded with the A-frame up, and while the amendment was not absolutely necessary, it was explanatory of the original statement, did no violence to the cause of action, created no new and different cause of action, and it being discretionary with the Court, to allow the amendment, so long as his discretion was not abused, we are constrained to overrule and disallow this second assignment of error.

Code secs. 8710-8713; Higgins-Crownover Tenn. Procedure p. 340 sec. 824; Patton v. Dixon, 105 Tenn. 97, 58 S. W. 299; Wagner v. Brady, 130 Tenn. 554, 171 S. W. 1179; Reagan v. McBroom, 164 Tenn. 476, 51 S. W. (2d) 995; Carter v. Pickwick Greyhound Lines, 166 Tenn. 200, 60 S. W. (2d) 421; State ex rel. Chanaberry v. Stooksbury, 176 Tenn. 687, 145 S. W. (2d) 775.

Assignments of Error No. III, IV, V, and VI, complain that the Court erred in refusing to give, in charge to the jury, plaintiff's special requests Nos. 1, 3, 4, and 5. There were 6 special requests by plaintiff and the Court declined all of them except special request No. 2.

In order to determine whether the Court erred by refusing either of plaintiff's special requests it is necessary that we understand the Court's general charge to the jury. The Court very carefully framed the general charge to the jury and a careful examination of the evidence, and the charge of the Court to the jury, reveals

the fact that the Court so clearly understood the evidence and the inferences which might be properly drawn from it, with respect to the rights of the plaintiff and the defendant that he overlooked nothing pertinent to the issues in the case when he gave to the jury the theory of the plaintiff and the theory of the defendant, and that the giving to the jury by the Court of plaintiff's special request No. 2 was merely a legal clarification of what the Court had said in his general charge.

In his general charge the Court had told the jury that before there could be any recovery in the case for the plaintiff that the burden was on the plaintiff to show by a greater weight or preponderance of the evidence six specific facts. They are stated as follows:

"(1) That at the time of plaintiff's injuries he was an employee or servant of defendant, George S. Funk.

"(2) That R. D. Smith, of Greenville, Kentucky, was authorized and empowered by George S. Funk to supervise and direct the unloading of this machine or dragline, and that his authority extended over the plaintiff in this connection or regard.

"(3) That the said R. D. Smith, in pursuance of his authority ordered and directed the plaintiff, W. C. Welden, to unload this dragline by lifting the boom, through mechanical force, without first placing the A-frame in an upright position, assuring him of the safety of this procedure.

"(4) That the said W. C. Welden, acting and relying on the assurance of R. D. Smith, as to the safety of this method, rather than on his own judgment,

and in obedience to this order and command by Smith, undertook to unload this dragline in this manner.

"(5) That this procedure or manner and method of unloading this machine was a dangerous one and constituted an act of negligence by George S. Funk through his agent, R. D. Smith.

"(6) That the negligence of the defendant, George S. Funk, through his agent Smith was the direct and proximate cause of Welden's injuries."

The Court correctly charged the jury the meaning of proximate cause. He had told the jury that contributory negligence nor assumed risk by plaintiff would be no bar to plaintiff's recovery, and in that connection, in his general charge he said to the jury:

"However, if you find that W. C. Welden, was guilty of negligence and that his negligence was the sole and proximate cause of his injuries, there can be no recovery in this case, by Welden."

Immediately following that statement in his general charge he said:

"Now, Gentlemen of the Jury, the first issue of fact that you have to determine in this case, is whether Welden was a servant or employee of Funk at the time of his injuries. If you find that he was an employee of Smith and Smith or Smith Coal Company, and not Funk, at that time, there could be no recovery and you need not consider the other issues."

Following that statement the Court properly instructed the jury, however, how to determine whether the

relationship of master and servant or employer and employee could be established. Yet out of an abundance of precaution in regard to that particular item the Court saw fit to grant defendant's request No. 2 which is as follows:

"Though you believe from the evidence that Funk engaged Welden and had him round up other men to constitute a crew to go to Kentucky to work on the Smith and Smith stripping work there, the Court instructs you, as a matter of law, that that did not prevent their becoming employees of Smith and Smith, and as such, being employees of Smith and Smith, in their work; in other words, transferring from Funk's employment, if you believe from the evidence that they were in his employment as the result of his engagement of them in Mississippi, to go to Kentucky, to Smith and Smith's employment in Kentucky, with their right to direct and control them in their work."

The defendant's special requests which were denied by the Court, except defendant's request No. 5, if the Court had so charged the jury the entire requests as presented it would have been tantamount to directing a verdict for the defendant, which the Court declined to do, and in which action we have concurred, and we find the proper parts of each of said requests were covered in the general charge.

Request No. 1 began with the statement:

"You are instructed as a matter of law,"
then followed certain actions on the part of the plaintiff which were admitted by him, and then closed with the statement:

"He became the employee of Smith and Smith subject to their direction and control in the matter of unloading the dragline from the flat car."

So special request No. 3 contains the statement:

"* * * If you believe from the evidence that before the arrival of the cars carrying the dragline Welden entered the employment of Smith and Smith as operator of the dragline for their stripping operations; you are instructed, as a matter of law, that Welden was acting as an employee of Smith and Smith in unloading * * *"

In special request No. 4, there is this statement:

"The Court further charges the jury that Mrs. Welden, signing for her husband after their discussion and decision to accept was sufficient to bring him within the Workmen's Compensation Law and insurance and Welden thereafter was entitled to hold Smith and Smith and their insurance carrier for the compensation specified by law."

■ The fifth special request of defendant was to the effect that the jury should take into consideration that, in the case filed by the plaintiff against the defendant in Kentucky, process had not been served upon R. D. Smith. As we view that statement it had nothing to do whatsoever with the facts of the instant case, and it was properly refused by the trial Court.

We think the evidence in the case presented issues of fact which were proper to be determined by the jury. Who was the employer of Welden at the time of his injury was sharply contested and the evidence and circumstance relating thereto was in conflict. Funk admitted

that Welden was instructed by him to take care of his equipment on that job. Smith detailed circumstances to show Welden was at that time in his employ. Welden and several witnesses who were in the crew with him testified that they were working for Funk, though to be paid by Smith. The wages to be paid were to be deducted from the sum to be paid Welden by Smith. Welden and some of the others with him, who went from Mississippi had worked for Funk previous to that date. Welden and others had signed certain documents relative to membership in the Union, the amount to be deducted from their pay for income tax, etc. Inferences could have been drawn from this conflicting evidence in favor of either party. The jury determined from these facts and circumstances that Welden was Funk's employee.

That Welden and others were to report to Smith on their arrival in Kentucky is testified by them and is admitted by Funk. The machinery was consigned to Smith and Smith, the billing having been accomplished by Welden, then working for Funk in Mississippi. Ordinarily the consignee would be in charge of the unloading of equipment shipped. Welden and others did report to Smith before the equipment arrived. They built a tool house. Smith procured permission from the owner of the railroad switch track or spur on which to spot the car for unloading. Welden and Smith had discussed the unloading in Smith's office. Smith knew the unloading was to take place on that Sunday. He was present at the time of the attempted unloading and injury. Funk came up the next day or soon after the injury and had the broken parts repaired and the machine removed from the cars. He was in Kentucky while the work was going

on several times, after the injury. The wages to be paid by Smith were to be deducted from the total contract price per yard for the removal of the over burden, none of which had been done at the time of the injury. Under all the facts the jury could infer that Smith was Funk's agent. There is sharp conflict in the testimony as to what Smith said to Welden at the time of the unloading. He admitted going over the route from the place of unloading to the mines to be worked with Welden and discussing the fact of overhead wires along the route and in the little town near the railroad prior to the arrival of the equipment. That the method of unloading was dangerous as was shown by what happened at the time, furnished some evidence from which the jury could infer that Smith was directing the unloading in a dangerous way and while he was acting for Funk.

■ As to the proximate cause. It is an admitted fact that Welden was standing on the tread of the dragline tractor, and that the cab was the usual place or station of the operator. There was also a cab on the other side of this operator for some purpose. Both were partly enclosed with sheet metal ⅛ to 1/16 inches thick. The operator cab was a small enclosure which with this thin metal covering furnished but little protection against a heavy blow. No person could be charged with determining which, if any part of the equipment would break first, nor if it did break how it would twist and bend with the force applied, and having determined that Smith was Funk's agent, that he directed this unloading, that he did so in a negligent manner, that Welden acted on Smith's orders, all furnished facts from which the jury concluded that Welden's position was not the proximate cause of his injury.

We think that the amendment to plaintiff's declaration, permitted by the Court, did not create any new or different cause of action and was properly allowed; that the Court properly charged the jury, and properly refused the special requests of defendant as set out above, and the plaintiff having a constitutional right to have the facts passed upon by the jury, and that there is some evidence in this case justifying the verdict of the jury, all the assignments of error are overruled.

Judgment will be rendered here for the amount of the judgment below with interest from date of the judgment below, together with the costs of the case in this Court and in the Court below.

Swepston, P. J., (Western Section) and Carney, J., concur.