JOHN CONNESS *vs.* COMMONWEALTH.

Suffolk.   November 16, 17, 1903. — January 6, 1904.

Present: KNOWLTON, C. J., MORTON, LATHROP, BARKER, & BRALEY, JJ.

*Evidence,* Of value of real estate.

On a petition for the assessment of damages for land taken by the metropolitan park commissioners under St. 1893, c. 407, mechanical engineers, familiar with the use of steam and water power and with mills of various kinds, but having no knowledge of the prices of land bought and sold in the vicinity of the land taken, except for manufacturing purposes, were allowed by the presiding judge to testify that the petitioner's land was well adapted for a mill site and to give their opinion of its fair market value for a particular kind of mill. There was testimony on both sides as to the value of the petitioner's land from persons familiar with the prices at which land was sold in the vicinity. *Held,* that, although the testimony of the mechanical engineers was objectionable and it would have been a better exercise of judicial discretion to have excluded it, the court could not say that there was no evidence in the case on which the presiding judge might find these witnesses qualified to aid the jury in fixing the market value of the property.

PETITION, filed September 29, 1900, for the assessment of damages for the taking by the metropolitan park commissioners under St. 1893, c. 407, of two parcels of land in that part of Boston called Dorchester.

At the trial in the Superior Court before *Bell,* J., the jury returned a verdict for the petitioner in the sum of $12,000 with interest from the date of the taking. The respondent alleged exceptions.

*R. G. Dodge,* Assistant Attorney General, for the Commonwealth.

*M. Storey,* for the petitioner.

KNOWLTON, C. J. The questions in this case relate to the admissibility of the testimony of two witnesses, called by the petitioner as experts to testify in regard to damages to real estate. One of them, so far as appears, had no knowledge of the prices at which land was bought and sold in the vicinity of the land taken by the respondent, and hardly any knowledge of the prices of land in other places. The other testified that he was "perfectly familiar with values in Dorchester and other places around Boston for manufacturing purposes, but not for any other purposes, and had nothing to do with any other purposes." Both of these witnesses were mechanical engineers who were familiar with the use of steam and water power and with mills of various kinds in many places. They were competent to give an opinion on the question whether the petitioner's property was adapted to use as a site for a mill, but their testimony tended to show that they had been occupied chiefly with mechanical subjects in connection with mills, rather than with prices or values. After they had testified that the petitioner's property was well adapted for a mill site, one of the witnesses was allowed to answer the question, "What is the fair market value of this combination of the land here with the water for the purposes of the rubber business?" and to say that it would be worth $50,000 for such a mill site. The other witness gave similar testimony. The respondent objected to the questions and answers, both in form and substance, and saved exceptions.

The subject thus presented was considered in *Cochrane* v. *Commonwealth,* 175 Mass. 299, and similar questions have arisen in previous cases. The sum to be awarded for real estate taken

is the fair market value of the property, having reference to all the uses to which it is adapted. Its value for any special purpose is not the test, although it may be considered, with a view of ascertaining what the property is worth in the market for any use for which it would bring the most. *Moulton* v. *Newburyport Water Co.* 137 Mass. 163, 167. *Providence & Worcester Railroad* v. *Worcester*, 155 Mass. 35, 42. *Teele* v. *Boston*, 165 Mass. 88, 92. *Maynard* v. *Northampton*, 157 Mass. 218, 219. *Fales* v. *Easthampton*, 162 Mass. 422. *Butchers' Slaughtering & Melting Association* v. *Commonwealth*, 169 Mass. 103, 118. In the case first mentioned, while it was decided that there may be trials in which it is necessary to receive the testimony of witnesses who have little or no knowledge of prices in the neighborhood where the taking occurred, some of the objections to such testimony were mentioned, and it was said that "for these reasons, the usual rule should be departed from and testimony of this kind admitted only when without it it is impossible to prove the value of the property in question." Such testimony is almost necessarily affected largely by the peculiar conditions and the nature of the management of some particular business with which the witness is acquainted. In the present case the first witness testified that he "knew by personal experience the expense of running and the profits of a rubber works, because in the Boston Belting Company case he had been employed to go over the entire expenses and profits of the business of the Boston Belting Company for seventeen years." We suppose this refers to an examination of the books and papers of a company which may have been very exceptional in its management and its profits. So, too, the market value for any particular use may be largely affected by the selling price of land in the vicinity. The question is not what a manufacturer could afford to give for a site if he could not get it at a less price, or could not get another at a lower rate, but what the property will bring in the market, in view of the great or small demand for it, and the condition of the market as to supply and demand in other places where the proposed business might as well be carried on. Ignorance of the market price of land in the vicinity leaves the testimony of mechanical engineers and mill managers of little worth as to market

values. Because of these and other considerations, we deem such testimony very objectionable, and we think the proposition quoted above from *Cochrane* v. *Commonwealth* should be treated as a rule of practice, and followed pretty strictly.

In view of the fact that "it was not claimed by the petitioner that it would be practicable to use the stream directly for water power on the petitioner's land, but only that he could take water from the river for steam and other manufacturing uses other than power," and the further fact that under the reservation in the taking, the owner of the part of the land which is left will have a right to take water from the river in any reasonable manner and to the same extent as heretofore for mercantile or manufacturing purposes, and to discharge the water into the river; and in view of the ignorance of these experts of the selling prices of land in the vicinity, and the introduction of many witnesses on both sides who were familiar with the prices at which property sold in that part of Dorchester, although they did not know the value of mill sites, we think it would have been a better exercise of judicial discretion if the testimony of these two witnesses as to values had been excluded. On the other hand, the questions which arose in passing upon the competency of the evidence at the trial were questions of fact, and we cannot sustain the exceptions if there was any evidence to warrant the view taken by the presiding judge. *Amory* v. *Melrose,* 162 Mass. 556, 557. *Commonwealth* v. *Sturtivant,* 117 Mass. 122, 137. He might find that the land had elements of value as a mill site. There was no testimony before the court in regard to the selling price of mill sites as such. The evidence tended to show that the experience of these witnesses enabled them to judge of the value of a mill site somewhat better than persons generally. We cannot say that there was no evidence on which he could find the qualifications of these witnesses to be such as might enable them to aid the jury in fixing the market value of the property, under the findings which he might make, and which the jury subsequently might make as to its condition and qualities. Notwithstanding the objections to such testimony, there was evidence on which it could be admitted in the discretion of the presiding judge, and the entry will therefore be,

*Exceptions overruled.*