M. O. CARTER, EXECUTOR, *v.* PICKWICK GREYHOUND LINES, INCORPORATED.

(*Jackson,* April Term, 1933.)

Opinion filed May 20, 1933.

W. L. OWEN, for plaintiff in error.

EMMETT W. BRADEN and WILSON, KYSER, ARMSTRONG & ALLEN, for defendant in error.

MR. JUSTICE MCKINNEY delivered the opinion of the Court.

This is a personal injury suit, in which plaintiff was given a verdict for $1,000.

The Court of Appeals reversed the judgment of the trial court and dismissed the suit because the plaintiff had assumed inconsistent positions in the case.

We have heretofore granted the writ of *certiorari,* and the case has been argued at the bar by counsel.

On April 17, 1930, R. Y. Carter, aged seventy, a resident of Nashville, Tennessee, while driving in a buggy on highway No. 61 in the State of Missouri, was struck by a bus operated by defendant and injured. R. Y. Carter

instituted this suit on September 23, 1930, to recover damages for the injuries so received. On November 1, 1930, R. Y. Carter was found dead in his bed at a boarding house in New Madrid, Missouri. On December 15, 1930, M. O. Carter qualified as executor of his father, R. Y. Carter.

When R. Y. Carter was injured in April, 1930, he was brought to Memphis and treated by Dr. Pistole, and a few days later returned to his home in Nashville. On April 29, 1930, R. Y. Carter was again in Missouri and was examined by Dr. Mayfield, and on May 23, 1930, he was examined in Missouri by Dr. Marshall.

Plaintiff testified that after the death of his father he talked to Dr. Pistole, and was led to believe that his father died from coronary thrombosis resulting from the injury received in April. Thereupon, on March 14, 1931, plaintiff suggested the death of his father, and had the case revived in his name as executor. At the same time he had the declaration amended so as to allege that R. Y. Carter died as a result of the injuries referred to above, and so as to sue for $25,000 instead of $10,000. The case was set for trial on May 27, 1931.

On May 25, 1931, plaintiff took several depositions in Missouri, including those of Doctors Mayfield and Marshall. Both of these physicians testified that the injuries which R. Y. Carter received in the collision in April were not of such a character as would have caused his death in November. The evidence further shows that R. Y. Carter resumed his regular work about two weeks after the accident, and was regularly employed until his death.

Plaintiff testified that after these depositions were taken he again talked to Dr. Pistole and he was uncertain as to the cause of his father's death. He further testified

that he investigated the family history and learned that his father's family were disposed to heart affections, and reached the conclusion that his father's death did not result from the injury received in April, 1930.

Dr. Pistole testified that plaintiff probably misunderstood him; that he stated that it could not be determined definitely what caused the death of R. Y. Carter without a *post-mortem* examination.

It should have been stated that on May 27, 1931, the trial of the cause was continued until October 14, 1931. When the case was called on the latter date defendant was permitted to amend its plea so as to rely upon a Missouri statute, which provides that only the surviving wife can maintain a suit for the wrongful death of her husband, and it was averred in the plea that R. Y. Carter was survived by his wife. Thereupon plaintiff was permitted to amend his declaration by striking out that part which averred that his testator died as a result of the injuries received on April 17, 1930, and by charging that R. Y. Carter did not die as the result of said injuries, and to limit the recovery to the damages sustained prior to his death. Under the Missouri statute such an action can be prosecuted by the executor, but it is otherwise if testator died from such injuries. In the amendment, which was supported by the testimony of plaintiff on the trial, the matter of a change in position was fully explained.

With respect to the merits of the case, we are satisfied that the jury reached a proper verdict, and that, as a matter of fact, R. Y. Carter did not die as a result of the injuries received as detailed above. The question for decision is, Should the plaintiff be precluded from recovering under the doctrine of ''shifting positions,'' or

"positive procedure?" This rule is based upon the following statement by Mr. Bigelow in his work on Estoppel (5th edition, p. 717), which has been approved by this court in a number of cases, and which is as follows: "If parties in court were permitted to assume inconsistent positions in the trial of their causes, the usefulness of courts of justice would in most cases be paralyzed. The coercive powers of the law, available only between those who consented to its exercise, could be set at naught by all. But the rights of all men are in the keeping of the courts, and consistency of proceeding is therefore required of all those who come in or are brought before them. It may accordingly be laid down as a broad proposition that one, without mistake induced by the opposite party, who has taken a particular position deliberately, in the course of litigation, must act consistently with it. One cannot play fast and loose."

It will be observed that the rule applies to inconsistent positions in the trial, and our decisions so limit it. It does not prohibit a party from amending his pleading so as to set up the true facts, when by inadvertence or mistake he has stated the facts incorrectly. Such is a common, everyday practice, and when made in good faith, such an amendment, in the sound discretion of the trial court, will be allowed. In this particular case plaintiff was not taking inconsistent positions *in the trial,* but was contending only that his testator did not die from the injuries received when his buggy was struck by the bus of defendant.

In *Stamper* v. *Venable,* 117 Tenn., 557, it was held that a litigant who had contended in the chancery court and in the Court of Chancery Appeals that certain documents

were deeds could not in the Supreme Court shift his position and claim that they were wills.

In *Stearns Coal & Lumber Co.* v. *Jamestown R. Co.*, 141 Tenn., 203, it appears that complainant charged that defendant was not a corporation, while in another pending suit it had charged that it was a corporation. The court treated the two suits as one, as did the complainant, and applied the doctrine here invoked. Complainant, in the same suit, was contending inconsistently that defendant was and was not a corporation.

At this point it is well to note the distinction between "estoppel" and positive procedure." In 10 Ruling Case Law 698, it is said: "The rule that a party will not be allowed to maintain inconsistent positions in judicial proceedings is not strictly one of estoppel, partaking rather of positive rules of procedure based on manifest justice and, to a greater or less degree, on considerations of the orderliness, regularity, and expedition of litigation. Certainly the elements of reliance and injury do not enter into such so-called estoppel to the same extent that they do in equitable estoppel proper."

In *Heggie* v. *Hayes,* 141 Tenn., 249, it was held that in a seduction case, where defendant's counsel, in argument before the jury, conceded that the plaintiff bore a good reputation, and the case was tried on that theory, he could not, on motion for a new trial, introduce evidence tending to besmirch her character.

In *Johnston* v. *C. N. O. & T. P. Ry. Co.,* 146 Tenn., 135, 161, the complainant had testified both ways in the same case as to a material fact. In applying the "positive procedure" rule, the court said:

"We wish to add that we have searched complainant's testimony for an explanation of its inconsistencies that

would entitle it, upon grounds of inadvertence or mistake, to some weight on the side of the jury's verdict upon these two issues, but could find none, and that, when for this purpose we went outside of his testimony and looked to his conduct and correspondence before the present difference arose, the impossibility of any such explanation was only emphasized.''

On the other hand, in *McLemore* v. *Railroad,* 111 Tenn., 632, 666, the court quoted approvingly from *Hamilton* v. *Zimmerman,* 37 Tenn., 48, as follows: ''Admissions or declarations made *in pais* are often entitled to little or no consideration, because made inconsiderately, or in ignorance of the facts, or not correctly understood or reported. And even when made with more deliberation and under oath, it may be made to appear that they were made inconsiderately or by mistake; and, if this be so, the party ought certainly to be relieved from the consequences of his error.''

The court then said: ''We do not think that the unsworn pleadings in this record come within the rule of law, which is intended to suppress fraud and to prohibit the deliberate shifting of position to suit the exigencies of each particular case that may arise concerning the subject-matter in controversy. In this case, it is claimed that the statements made in the former pleadings were not made considerately, and with a due knowledge of facts, and that a further examination of the subject-matter has led to a wholly different conclusion.''

In *Harris* v. *Water & Light Co.,* 114 Tenn., 328, 340-341, it is said:

''The defendants, however, insist that the complainants are estopped by the admission made in this former judicial proceeding that Cole Bros. was a corporation.

This defense is equally unavailing to preclude the complainants from avoiding the effect of the mistake of fact made by them therein. This mistake, according to the bill in this case, was innocently made, in unsworn pleadings, from which, so far as the record shows, no detriment has been worked to the defendant. Such a pleading under these conditions comes within the case of *McLemore* v. *Railroad,* 111 Tenn., 639, 69 S. W., 338. The rule of estoppel is applied with peculiar force to admissions or statements made under oath in a pending cause, but even they may be relieved against where made inconsiderately or by mistake. *Hamilton* v. *Zimmerman,* 5 Sneed, 39.''

These two last named cases were approved by this court in *Stearns Coal & Lumber Co.* v. *Jamestown R. Co., supra,* page 207.

In *Sartain* v. *Dixie Coal & Iron Co.,* 150 Tenn., 633, 655, the defendant had filed a sworn answer in which it was alleged that a part of the coal involved came from the land of complainant, while by an amendment it was averred that none of this coal came from this particular land. It was contended that defendant was estopped to take a position which was inconsistent with its sworn answer. In responding to this contention, the court said:

''The question now presented is not one of judicial estoppel, but whether the chancellor abused his discretion in allowing an amendment to a sworn pleading. In the case of *Hill* v. *Harriman, supra,* as will be observed, the chancellor had disallowed the proposed amendment.

''It is undoubtedly true that the liberal rules which apply to amendments of unsworn pleadings do not prevail where the pleading is under oath. But the amendment in this case was apparently made without objection.

Certainly none appears in the record. There is no wayside bill of exceptions; nor is there a recital in the decree. Even the petition to rehear is silent on this subject. So, far as the record shows, the point was raised for the first time on appeal.

"We do not mean to say that exceptions must be taken to every ruling and interlocutory decree made by the chancellor during the progress of an equity suit, in order to permit an assignment of error in the appellate courts. There is a clear distinction between courts of law and courts of equity in this regard.

"Nor do we intend to depart from the sound doctrine that sworn pleadings cannot be amended without explanation, and as a matter of course.

"We simply hold that on this record, and under the facts disclosed, we cannot say that the chancellor abused his discretion in allowing the amendment."

Likewise, in the instant case, the question involved is that of abuse of discretion in allowing the amendment, and after fully considering the case, we have concluded that there was no such abuse. Testator died suddenly when unattended and was not under the care of a physician. The cause of his death was uncertain and speculative. Plaintiff consulted the physician who had examined and treated him when he was injured in April, and upon his statement, as he understood it, enlarged the scope of his action by suing for wrongful death, in addition to the things sued for in the original declaration.

It must have been apparent to plaintiff on October 14, 1931, that testator did not die as a result of said accident. Plaintiff so testified without contradiction, the depositions previously taken were to that effect, and there is no testimony in the record to the contrary.

It is said that plaintiff would not have amended his declaration but for the plea of the Missouri statute. That is probably true, because but for this plea such an amendment would have been unnecessary. Although plaintiff had become satisfied that he could not recover for the wrongful death of testator, the allegation that the latter died as a result of said accident was harmless, and in nowise involved his right to recover for the injuries set forth in the original declaration. To state it differently, if defendant had not plead the Missouri statute, the plaintiff could have recovered for the injuries alleged in the original declaration, notwithstanding it appeared from the testimony that testator did not die as a result of the accident on April 17, 1930. Apparently counsel for plaintiff were proceeding upon the presumption that the law in Missouri was the same as that in Tennessee until they were informed to the contrary by the amendment to the plea.

While the defendant excepted to the amendment to the declaration, the exception was general, the record being silent as to the ground upon which the exception was based. Ordinarily a general exception is insufficient, because the trial court should not be put in error for a matter which was not specifically called to his attention. In view of the facts and circumstances referred to herein, we think the amendment was made in good faith, that it speaks the truth, and that it was not prejudicial to the defendant.

The Court of Appeals held that if in error as to the filing of the amended declaration, the case would have to be reversed and remanded because it affirmatively appeared that the verdict of the jury was not approved by the trial court. The trial court gave the usual instruc-

tion that the plaintiff must sustain his theory by a preponderance of the testimony. Upon the motion for a new trial, the court said:

"Counsel very properly characterizes this as a most peculiar lawsuit. It is certainly the most peculiar one that I ever tried in my life. This Missouri statute requires the plaintiff to prove a negative, and the attorney for the plaintiff and the attorney for the defendant and the Judge of the Court all agreed that the proper interpretation of that statute was to put on the plaintiff the burden of proving the negative, and he started out to do it. I never hesitate to set aside a verdict of the jury if, in my opinion, it is contrary to the weight of the evidence. I take that very seriously. I am in this peculiar situation with reference to this lawsuit, both as to the amount, and as to the question of liability, under that negative proposition. I am not able to say that the verdict is contrary to the weight of the evidence. I want very frankly to say that neither can I say that a preponderance of the evidence is in favor of the verdict.

. . .

"As to the question of weight, either as to the amount of it, or the question of whether the man died from the injuries or not, I can't say that the verdict of the jury is against the weight of the evidence, and neither do I say that the weight of the evidence is with the plaintiff. I will let the appellate court solve what the court ought to do in that situation. I don't know."

From the foregoing it is apparent that the trial court considers the testimony evenly balanced, both as to liability and the amount of the recovery. He states unequivocally that the verdict is not sustained by a preponderance of the testimony, and treating him as the

thirteenth juror, it was his duty in this situation to grant a new trial.

This court, in *Telephone & Telegraph Co.* v. *Smithwick,* 112 Tenn., 463, 470, said:

"It has been held that this court has no power to act until the circuit judge has acted. *R. Co.* v. *Lee,* 95 Tenn., 388, 32 S. W., 249; *R. Co.* v. *Brown,* 96 Tenn., 559, 38 S. W., 560; *R. Co.* v. *Neely,* 102 Tenn., 700, 52 S. W., 167.

"In deciding the matter, the circuit judge is not bound to give any reasons, any more than the jury is bound to do so. If he does give reasons for his action, this court looks to them only for the purpose of determining whether he passed upon the issues, and was satisfied or dissatisfied with the verdict thereon." See also *Curran* v. *State,* 157 Tenn., 1, and *Houk* v. *Memphis Const. Co.,* 159 Tenn., 109.

The trial court should have been governed by the same rules which he gave in charge to the jury, viz., if the testimony was equally balanced or preponderated in favor of the defendant, he should have granted a new trial; otherwise he should have refused a new trial.

The judgment of the Court of Appeals will be modified in accordance with this opinion, and the case remanded to the circuit court for a new trial.

The costs of the appeal will be divided; other costs to be adjudged by the trial court.