DAVIDSON COUNTY BOARD OF EDUCATION

*v.*

FIRST AMERICAN NATIONAL BANK, Trustee

(*Nashville*, December Term, 1956.)

Opinion filed April 1, 1957.

Rehearing Denied May 3, 1957.

ELMER D. DAVIES, JR., County Attorney, Nashville, for petitioner.

GRACEY & BUCK and JAMES C. SUMMERS, Nashville, for respondent.

MR. JUSTICE BURNETT delivered the opinion of the Court.

This is a condemnation case in which the Board of Education sought to condemn 16.55 acres of a 52.5 acre

tract of land for the purpose of erecting a school building in Davidson County.

The jury of view fixed the value for the property taken at $32,387 and allowed $8,097 as incidental damages. On appeal to the Circuit Court that court trying the case with a jury rendered a verdict in favor of the property owner for $35,000 for the actual land taken, and found that the incidental damages were offset and balanced by the incidental benefits. On appeal to the Court of Appeals that Court reversed holding that the trial court erred in excluding a plat which was offered by the property owner and too, that there was no evidence to support the verdict of the jury that there were any incidental benefits which offset the incidental damages. Petition for *certiorari* was seasonably filed, granted, briefs filed and arguments heard here and we now have the matter for determination.

There are two assignments of error, both of which largely hinge around the first assignment which is to the effect that the Court of Appeals erred in concluding that the trial court erred in sustaining the County's objection to the introduction of a plat on behalf of the property owners. The second assignment is to the holding of the Court of Appeals wherein that Court held that there was no evidence to support the verdict of the jury as to incidental benefits.

Prior to the taking of this property by the Board of Education for school purposes the land consisted of 52.5 acres. It had not been plotted or subdivided into building lots with roads, etc., through it prior to the time that it was taken. The plat that was objected to (objection was sustained in the trial court) was prepared by an

engineer witness in the lawsuit and was prepared for the admitted purpose of illustration and persuasion in connection with these condemnation proceedings. All the witnesses on behalf of the land owner who were experts on subdivisions, the sale of land, geared their testimony to this plat and to the conception that this subdivision which was not in existence prior to the taking of this property by the school, was subdivided into lots. The offering of this plat and the evidence in connection therewith was based on the proposition that the plat and the evidence in connection therewith was attempting to tie this tract of land down to a particular subdivision and one that was not in existence but was imaginary and was created only for the purpose of this condemnation proceeding. It was on this theory that the trial judge sustained the objection of the County to the introduction of the plat. Thus it is that we reach the important question in this lawsuit.

In Tennessee the "fair market value" rule as to the value of property being condemned holds. *Alloway v. City of Nashville*, 88 Tenn. 510, 13 S.W. 123, 124, 8 L.R.A. 123. The meaning of this evaluation rule as stated to the jury by the trial judge was as;

"fair, cash market value of a piece of property is that value which might be derived if a party is willing to sell but does not have to sell, a piece of property, and a party who is willing to buy, but he does not have to, he is not forced to buy the property."

This is a correct statement of the rule.

The trial judge then went on to say to the jury that: "in considering what is the fair market value of the

property, on the date in question, you will take into consideration the capabilities of the property and its uses and those to which it may be best suited and adapted and every other element of value which has been proved by a preponderance of all the evidence to exist as of the date of taking.''

█ The jury was then correctly instructed as to what are incidental damages and what are incidental benefits and then told,

"that you may set off incidental benefits, if any you find, against any incidental damages, if any you find, and vice versa. Or to put it in another way, you can pit benefits against damages or damages against benefits.''

And then they were told that they could not offset either the benefits or damages against the actual value of the property. On such a correct charge which is almost the verbatim language of this Court in the Alloway case, *supra*, the jury arrived at the conclusions set out in the first paragraph hereof.

We have no case on the direct point here involved in this State. In a recent work on the question, Orgel On Valuation Under Eminent Domain, 1953, the author very succinctly and ably reasons the questions here involved. In Volume 1, Sec. 28, page 138, commenting on how we should arrive at the fair market value he says:

"It is obvious that the use to which the farmer is now putting the land does not alone determine its market value. It is equally obvious that the value cannot be found by a summation of the values for each separate use, since some of these uses are mutually

exclusive. And it is no less obvious to anyone familiar with the nature of capital value, that the prospective uses must be fully discounted both for futurity and for the risk that they may not materialize.''

■ In this State we have adopted the view that ''value in view of all available uses'' (*Alloway v. City of Nashville, supra*) is the proper phrase to use in valuation as against phrase ''value for the best use'' as is used by the minority of the States. We are bound by the majority view, that is that we consider the ''value in view of all available uses''. It is well said that we use this phrase to warn the jury against awarding the ''value for a particular use''. In *Conness v. Commonwealth,* 184 Mass. 541, 69 N.E. 341, that Court said:

''The sum to be awarded for real estate taken is the fair market value of the property, having reference to all the uses to which it is adapted. Its value for any special purpose is not the test, although it may be considered, with a view of ascertaining what the property is worth in the market for any use for which it would bring the most.''

The author of Orgel On Valuation, *supra,* in Section 30, on page 146 makes this very pertinent statement:

''The courts are unanimous in admitting testimony on the adaptability of property for this use and for that, save for the familiar restrictions against the consideration of highly 'remote and speculative' contingencies. But it has been held in most cases that a witness may not himself translate the adaptability into a statement of its money value. A properly qualified witness may express an opinion that the property has

a 'fair market value' of $10,000, and he may explain, both on direct and on cross examination, the particular qualities of the property which lead him to conclude that it is worth this amount. But he is not ordinarily permitted to testify that the property 'has a value of $10,000 for building lot purposes' or 'for the best use'.''

When we read the Alloway case, where the proper question is stated on page 515 of 88 Tenn., on page 123 of 13 S.W., as to what a witness should be asked as to the value of property we find that the above summary fits our holding.

■ As is said further on page 149 of the same work last above quoted from:

''* * * the apparent aim of the courts in employing the 'all available uses' formula is to avoid overvaluation by preventing the jury from giving excessive weight to the value for the purposes for which the property is being condemned.''

This was the ascribed reason of the trial judge for sustaining the objection to the admission of this plat and the evidence based thereon. We think clearly under reason and authority herein cited that the trial judge was eminently fair and correct in his reasons and conclusion.

This rule which is in effect in Tennessee is the majority rule. All available uses and not the value for a particular use rule meets the approval of this author, Orgel, above quoted from. He says in commenting on it that the jury ''is likely to strike some rough average between the higher and lower figures at which it believes that the property might be sold for various purposes.''

Clearly this and this reasoning meets our yardstick as to the values of property being condemned.

The Supreme Court of California in *Sacramento Southern R. Co. v. Heilbron,* 156 Cal. 408, 412, 104 P. 979, 981, have to our minds best expressed what we are here considering. We quote and adopt as the rule to be followed in this State the following succinct statement from the California Court:

"It is seen, therefore, that this court by its latest utterances has definitely aligned itself with the great majority of the courts in holding that damages must be measured by the market value of the land at the time it was taken, that the test is not the value for a special purpose, but the fair market value of the land in view of all the purposes to which it is naturally adapted; that, therefore, while evidence that it is 'valuable' for this or that or another purpose may always be given and should be freely received, the value in terms of money, the price, which one or another witness may think the land would bring for this or that or the other specific purpose is not admissible as an element in determining that market value, for such evidence opens wide the door to unlimited vagaries and speculations concerning problematical prices which might under possible contingencies be paid for the land, and distracts the mind of the jury from the single question—that of market value—the highest sum which the property is worth to persons generally, purchasing in the open market in consideration of the land's adaptability for any proven use."

We think that this concise statement is exactly what this Court meant in the Alloway case, *supra,* because

property really has but one market value; it did not have a value for one use and another for another but in condemnation it has one and only one market value which may be arrived at by the questions as set forth in the Alloway case and the eliciting of answers from the expert witnesses on different things as we have heretofore herein shown. When it is looked at from this standpoint it is clearly obvious to us that this map (it was for the purpose of this litigation) was inadmissible. But the witnesses may be asked and may state as hereinbefore . shown how they arrive at various and sundry values of the property, its damages and benefits, etc. In further comment on this question we take a statement from the Supreme Court of Pennsylvania in *Pennsylvania S. V. R. Co. v. Cleary*, 125 Pa. 442, 17 A. 468, 470, as follows:

"The jury are to value the tract of land and that only. They are not to determine how it could best be divided into building lots, nor to conjecture how fast they could be sold, nor at what price per lot. A speculator or investor, in deciding what price he could afford to pay, would consider the chances and probabilities of the situation as then actually existing. A jury should do the same thing. They are not to inquire what a speculator might be able to realize out of a resale in the future, but what a present purchaser would be willing to pay for it in the condition it is now in."

This statement has been adopted and approved by the Third Circuit United States Court of Appeals in *United States v. 3,544 Acres Of Land*, 3 Cir., 147 F.2d 596, 598, as well as by the Supreme Court of Utah in *State v. Tedesco*, 4 Utah 2d 248, 291 P.2d 1028.

In the Alloway case above this Court, fifty years ago, said:

"In determining the market cash value, you cannot single out from the elements of general value the value for an especial purpose; but you are to consider all the constituent elements that make up the market value,—its availability, adaptability, and capability for different uses and purposes." (88 Tenn. 510, 13 S.W. 124.)

This statement from the Alloway case is exactly what we have been trying to elaborate on heretofore and what as we conceive the trial judge held in excluding the plat herein. The proof herein as offered by both sides showed the potential use of this land for residential subdivision purposes and was an element that the jury could consider. Its location and the history of the surrounding area was taken into consideration and was offered as evidence before the jury by both sides. The conflict of course comes wherein the property owner attempts to introduce this map and to hinge its proof on the value of this piece of land purely for the one purpose as that of a subdivision. In so doing we think that this is not admissible.

■ The Court of Appeals obviously was in error when it said:

"We also think that the expert witnesses should have been permitted to testify about, and the jury should have been allowed to consider their testimony, involving all the elements that entered into their respective estimates of value of the land taken, as well as incidental damages and/or benefits to the remaining land, based on its present or *prospective highest and*

*best use,* which, in this instance was shown to be for subdivision into lots for residential purposes.''

■■ The jury had before them complete evidence in the taking and the consequences of such taking. They had drawings, photographs and the opinions of some three or four real estate men for their analysis and consideration. The jury, apparently by their verdict did not accept any particular expert's theory but they took the whole thing as offered by both sides and using their own judgment on such things as well as the evidence introduced and from this arrived at their verdict. The evidence introduced as to the value of this property ranged all the way from $64,600 down to around $30,000. Some of the witnesses testified as to what the incidental damages were and why they thought that the property owner was damaged in this way. Other witnesses did not seem to think that there were incidental damages and that the incidental benefits would offset those damages. One of the witnesses we remember in particular thought the other property was damaged because it adjoined school property, while another witness thought that this would help it a great deal. So it is that we have some evidence as to incidental damages and incidental benefits as well as the fact that the jury are supposed to be sensible men and had experience and they were entitled to take this experience into consideration in evaluating the evidence of these various witnesses. By thus doing so there was ample evidence to support the jury in its conclusion that the incidental benefits offset the incidental damages and then they fixed as they were instructed to by the court the full value of the land taken as of $35,000.

The result is that the judgment of the Court of Appeals is reversed and that of the trial court affirmed.

## On Petition to Rehear.

We have been presented with a petition to rehear in this cause arguing again the question so ably argued orally before us and in the original brief: "that there is *no substantial* evidence to support the verdict of the jury * * *", as to incidental benefits offsetting incidental damages.

It is very earnestly and seriously contended again that the record fails to show any incidental benefits to offset certain evidence of incidental damages. And too, the case of *Vaulx v. Tennessee R.,* 120 Tenn. 316, 108 S.W. 1142, is again brought to our attention and is argued that the rule therein stated is applicable here.

The rule relied upon and the question presented in the Vaulx case was that where there is a motion for new trial challenging the sufficiency of the evidence to support the verdict, it is the duty of the trial judge to weigh the evidence and satisfy himself that it preponderates in favor of the verdict, or, if it does not, to grant a new trial. The reasons for the rule are obvious and have been discussed time and again in various authorities in this State. Upon reading the opinion of *Curran v. State,* 157 Tenn. 7, 4 S.W.2d 957, and *Carter v. Pickwick Greyhound Lines,* 166 Tenn. 200, 60 S.W.2d 421, this rule and the reasons therefor will be found to have been discussed at length. We think the rule a good one and one that applies here equally as well as it did in any of the cases cited. This is not the question here though because the trial judge did exercise the function of a thirteenth

juror; he weighed the evidence and passed upon the issues and decided whether or not the verdict of the jury was supported by the evidence, and he concluded that the verdict was supported by the evidence.

We read this record and concluded too that this verdict of incidental benefits offsetting the incidental damages was supported by certain statements of witnesses in this record. We were satisfied with the fact. We did not and it is not our obligation, to set down two columns of figures and add or subtract and see whether or not one offset the other. This was not our function and neither was it the jury's function or the trial judge's function if he concluded that the statements or evidence of certain witnesses merely to the fact that in their opinions (after being duly qualified) that the incidental damages offset the incidental benefits, then this was sufficient.

In a condemnation case the amount to be allowed or fixed for incidental damages or incidental benefits and the amount to be allowed for the actual value of the property taken is peculiarly within the province of the jury, and unless the same be shown to be so wholly unfair and unreasonable, this Court will not interfere with the verdict of the jury. We read this evidence and if we are satisfied that the verdict has not been influenced by passion or prejudice or some other motive on the part of the jury which caused its verdict to be rendered as it was, which is all out of line, then we will not disturb the verdict. The trial judge heard this evidence and saw these witnesses and exercised his duties and prerogatives after the verdict had been rendered on passing on the motion for new trial. He committed no

error therein. The record does contain substantial evidence to support this conclusion.

The weight to be given the testimony of any one of the witnesses who expressed opinions would depend, of course, on the candor, intelligence, experience and knowledge of values on the part of the witness. The values will usually be established by the opinions of witnesses who are familiar with the value of property and who express opinions from their experience as to the actual value of the property taken and as to whether or not the other property is damaged or benefited. Merely because one witness says that it is damaged so many thousand dollars or hundreds of dollars, and another witness says, ''Well, it helped them. It helped them a great deal, did it? Yes sir, that's right, helped them.'' In other words what we are trying to say is this that the jury may accept the judgment of a witness who is not voluble in figures and take his judgment as says well one about or does offset the other. Then under these circumstances it is up to the jury to evaluate what these witnesses say and arrive at their conclusion. As to who is competent to express opinion upon the value of the land and the incidental benefits and incidental damages is largely a question within the discretion of the trial court.

The credibility of these various witnesses is challenged in that one witness is asked certain questions and says one thing and another witness says another. Under such circumstances the jury is the final arbiter of whether that challenge shall be given the effect of discrediting the witness and eliminating his testimony. All of this makes, and more especially in cases of this kind

where the evidence is largely opinion evidence, the statements that this Court has made in the past on the effect to be given a jury verdict more pronounced than ever. We have heretofore said:

"Another well established rule must be kept in mind, that is, that the jury has seen and heard all witnesses for both sides and after seeing and hearing them has determined these issues against the plaintiff in error. Their credibility has thus been determined." *Batey v. State,* 191 Tenn. 592, 597, 235 S.W.2d 591, 593,

and

"The jury saw and heard the witnesses testify and observed their demeanor on the witness stand, and the question of their credibility was settled by the verdict of the jury." *Robertson v. State,* 189 Tenn. 42, 44, 221 S.W.2d 535, 536,

and

"This is no more than a question of the credibility of the witnesses and is foreclosed by the verdict." *Turner v. State,* 188 Tenn. 312, 318, 219 S.W.2d 188, 191.

It is true these statements above quoted were made in criminal cases but it seems if those rules apply in criminal cases that they should apply equally in a civil case for stronger reasons. Here we have only property rights involved while in the criminal cases the life and liberty of the citizen was involved.

For these reasons we feel that we were right originally and that there is evidence in this record wherein the jury and trial judge could, as they did, find that incidental damages were offset by incidental benefits and for these reasons herein expressed we must deny the petition to rehear.