IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 14, 2010 Session

## CITY OF BRENTWOOD v. GEORGE M. CAWTHON

**Appeal from the Circuit Court for Williamson County**
**No. 07036    Robbie T. Beal, Judge**

_____

**No. M2009-02330-COA-R3-CV - Filed May 13, 2010**

_____

This is a condemnation case in which the City of Brentwood acquired 0.72 acres of land by eminent domain for the purpose of constructing a 2.5 million gallon water tank. Following a trial, the jury awarded $43,200 for the value of the land taken and $194,850 for the incidental damages to the remainder of the property. The City's ability to take the land and the amount awarded for the value of the land taken is not in question; rather, the City appeals the amount of incidental damages awarded. Finding no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL, P.J., M.S., and FRANK G. CLEMENT, Jr., J., joined.

J. Todd Moore and Keith Jeremy Woodruff, Franklin, Tennessee, for the appellant, City of Brentwood.

Jonathan Lewis Williams and Albert Wayne Crim, Nashville, Tennessee, for the appellee, George M. Cawthon.

**OPINION**

## I. Background

The City of Brentwood (the "City") acquired by eminent domain 0.72 acres of land owned by the Appellee, George M. Cawthon, for the construction of a 2.5 million gallon above ground water tank that is approximately 50 feet high. The land taken occupies the

highest point and most level part of a hill within Mr. Cawthon's 35.48 acre property.[1]  Mr. Cawthon did not object to the City's authority to take the land, but challenged the amount tendered by the City, $36,225, to the court with its petition for condemnation.

A trial was held before a jury during which testimony was heard from Mr. Cawthon; William R. Parrish, Mr. Cawthon's expert witness; Christopher P. Milton, Director of Water Services for the City; and Norman Hall, the City's expert witness.  There were no objections to the qualifications of either Mr. Parrish or Mr. Hall to testify as expert witnesses.  Both Mr. Parrish and Mr. Hall utilized a comparison sales approach to determine the value of Mr. Cawthon's property at the time of the taking.  Mr. Parrish opined that at the time of the taking in 2007, the property was worth approximately $60,000 per acre; consequently, the value of the land taken was $43,200.  Mr. Hall testified that it was his opinion that at the time of the taking Mr. Cawthon's property was worth approximately $50,000 per acre such that the value of the land taken was $36,000.

With respect to incidental damages, the City's expert witness, Mr. Hall, testified that, based on his research of other properties located near similar water tanks, there was no decline in the value of those properties following the erection of the water tank; consequently, he opined that there were no incidental damages to the remainder of Mr. Cawthon's property as a result of the construction of the water tank.

Mr. Cawthon testified that the erection of a 50-foot high concrete structure at the highest and most level point on the property "defaced" it and changed its character from a "very desirable residential site" to "more like an industrial site."  Mr. Cawthon did not give his opinion as to the amount of incidental damages, though he stated that he agreed with Mr. Parrish's estimate regarding the loss of value to the land due to the taking and construction of the water tank.  Mr. Parrish testified that there were incidental damages to the remainder of Mr. Cawthon's property as a result of the taking, concluding that the future development of the property had been adversely affected because the most desirable spot on which to build a residence on the property, the highest and most level spot with the best view of the surrounding area, was where the City built the water tank.  Mr. Parrish explained that in his professional experience, hillside and hilltop property in Williamson County is some of the most desirable land because property owners want to showcase their homes.  He further explained that Mr. Cawthon's property was unique because the hill on his property had a "commanding view" compared to the other hills in the area and that such views from hilltops brought in "premium prices" in Williamson County.  Based on this experience, Mr. Parrish

_____

[1]  Mr. Cawthon's property is actually divided by Ragsdale Road, a public road.  Prior to the taking, the tract on the eastern side of the road consisted of 8.78 acres while the tract on the western side of the road consisted of 26.7 acres.  The 0.72 acres taken was located solely on the western tract.

concluded that the loss of the view from the top of the hill on the property would adversely affect the value of Mr. Cawthon's remaining property.

Mr. Parrish testified that incidental damages were also appropriate because the property was less aesthetically pleasing after the taking and the construction of the water tank. Mr. Parrish explained that he had worked on condemnation cases involving Tennessee Valley Authority electricity transmission lines and Tennessee Department of Transportation elevated highway and bridge projects and, in his professional experience, such eyesores diminished the value of a property near them. Mr. Parrish also testified that while he was not aware of any studies specifically regarding above ground water tanks such as the one in this case, he had seen TVA and TDOT studies related to power lines and elevated highways that showed a diminution in value of up to 80-85 percent. Mr. Parrish opined that there was a 12.5 percent diminution in value to the western tract of Mr. Cawthon's property due to the loss of the property's hilltop view and the decline in aesthetics with the water tank on the highest hilltop on the property.

The City objected to Mr. Parrish's testimony regarding incidental damages as being beyond the scope of discovery, lacking in foundation, irrelevant and inadmissible. The trial court overruled the objection finding that Mr. Parrish was merely making a general statement as to how he realized his conclusions as opposed to relying on specific technical data. The court also overruled the objection on the grounds that Mr. Parrish's testimony was relevant and that the City was free to cross-examine Mr. Parrish regarding his analysis and methodology. The trial court then instructed the jury that in their deliberations regarding value it would be for them to determine whether the experts used proper or correct data in their analysis.

The jury returned a verdict and a judgment was entered awarding $43,200 for the value of the land taken and $194,850 for the incidental damages to the remainder of the property, resulting in a total award of $238,050. The City appeals only the award of incidental damages on the grounds that Mr. Cawthon's expert witness testimony regarding incidental damages was inadmissible and without such testimony there was no other evidence to support an award of incidental damages.

## II. Discussion

The issues on appeal relate solely to the award of incidental damages. This case was heard by a jury and generally when jury trials are involved, our task is to determine whether there is any material evidence to support the jury's verdict. *See Harper v. Watkins*, 670 S.W.2d 611, 631 (Tenn. Ct. App. 1983); *Lassetter v. Henson*, 588 S.W.2d 315, 317 (Tenn. Ct. App. 1979); *see also* Tenn. R. App. P. 13(d). The City, however, does not assert that the

-3-

jury's verdict is unsupported by the evidence; rather, the City contends that the trial court erred in admitting William Parrish's expert testimony regarding the existence and amount of incidental damages. The City contends that Mr. Parrish's testimony failed to meet reliability and relevance standards and lacked foundational support for the methodology used in determining the amount of incidental damages. The City asserts that without Mr. Parrish's testimony, Mr. Cawthon failed to meet his burden of proof that there were any incidental damages to the remainder of the property. The City asks this Court, therefore, to reverse the judgment of the trial court as to the amount of incidental damages and remand the case for an order based on the otherwise admissible evidence in the record.

When property is taken under the power of eminent domain, the Tennessee Constitution requires that a landowner be compensated for the value of the land taken. Tenn. Const. Art. 1, § 21. Tennessee statutes also provide that a landowner is entitled to any incidental damages, which may have resulted to the remainder of the owner's property, after deducting from the incidental damages the value of any special benefits resulting from the improvement. Tenn. Code Ann. § 29-16-114(a)(1); Tenn. Code Ann. § 29-17-910.

Incidental damages are generally measured by the difference in the remaining property's fair market value immediately before and immediately after the taking. *Mills v. Solomon*, 43 S.W.3d 503, 508-09 (Tenn. Ct. App. 2000); *Betty v. Metropolitan Gov't*, 797 S.W.2d 1, 7 (Tenn. Ct. App. 1992); *Shelby County v. Kingsway Greens of America, Inc.*, 706 S.W.2d 634, 638 (Tenn. Ct. App. 1985); *State ex rel. Shaw v. Gorman*, 596 S.W.2d 796, 797 (Tenn. 1980). Incidental damages should be measured in relation to the entire tract of property. *Mills*, 43 S.W.3d at 509; *see Blevins v. Johnson County*, 746 S.W.2d 678 (Tenn. 1988); *State ex rel. Pack v. Walker*, 423 S.W.2d 473 (Tenn. 1968). Factors that may be considered in determining the existence and extent of incidental damages include the loss of use of the property for any lawful purpose, any unsightliness of the property or inconvenience in its use, any impairment to the owner's access to nearby streets and highways and any other consideration that could reduce the fair market value of the remaining property. 26 *Am. Jur. 2d Eminent Domain* § 284 (2010); 8 *Tenn. Prac. Pattern Jury Instr. - Civil* § 11.04 (2009). The landowner bears the burden of proof and of producing evidence as to the issue of compensation. *Catlett v. State*, 336 S.W.2d 8, 11 (Tenn. 1940); *Town of Erin v. Brooks*, 230 S.W.2d 397, 411 (Tenn. 1950); *Lebanon & Nashville Turnpike Co. v. Creveling, Comm'r, et al.*, 17 S.W.2d 22, 24 (Tenn. 1929).

The City's central challenge relates to the trial court's admission of Mr. Parrish's expert testimony regarding the existence and amount of incidental damages. The City asserts that Mr. Parrish's testimony failed to meet the reliability standards for expert testimony because, according to the City, it was not supported by any facts or data, was not calculated by any methodology and was based upon mere speculation. The City further contends that

Mr. Parrish's testimony did not satisfy the requirements of proof for incidental damages because Mr. Parrish's opinion failed to calculate the fair cash market value of the remaining property immediately after the taking.

Tennessee Rules of Evidence 702 and 703 govern the admissibility of expert testimony in Tennessee. Rule 702 states that "[i]f scientific, technical, or other specialized knowledge will substantially assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise." Rule 703 provides in relevant part:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the fact or data need not be admissible in evidence. . . . The court shall disallow testimony in the form of an opinion or inference if the underlying facts or data indicate lack of trustworthiness.

Accordingly, the trial court "must determine that the expert testimony is reliable in that the evidence will substantially assist the trier of fact to determine a fact in issue and that the underlying facts and data appear to be trustworthy." *Brown v. Crown Equipment Corp.*, 181 S.W.3d 268, 274 (Tenn. 2005). The rules, however, do not require that the scientific evidence be generally accepted in order to be valid, so long as it substantially assists the trier of fact and its underlying facts and data appear to be trustworthy. *McDaniel v. CSX Transp., Inc.*, 955 S.W.2d 257, 265 (Tenn. 1997).

When determining the reliability of nonscientific expert testimony, the court may also consider the following nondefinitive factors:

(1) the *McDaniel* factors,[2] when they are reasonable measures of the reliability of expert testimony; (2) the expert's qualifications for testifying on the subject at issue; and (3) the straightforward connection between the expert's knowledge and the basis for the opinion such that no "analytical gap" exists between the data and the opinion offered.

*State v. Stevens*, 78 S.W.3d 817, 835 (Tenn. 2002).

When it comes to the admissibility of expert testimony, the role of the trial court is that of a gatekeeper. *State v. Scott*, 275 S.W.2d 395, 401-02 (Tenn. 2009) (citing *State v. Copeland*, 226 S.W.3d 287, 300-01 (Tenn. 2007); *Johnson v. John Hancock Funds*, 217 S.w.3d 414, 425 (Tenn. Ct. App. 2006)). "Their role 'is to ensure that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Id.* (quoting *Brown*, 181 S.W.3d at 275); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). It is important to emphasize, however, that once the evidence is admitted, "it will thereafter be tested with the crucible of vigorous cross-examination and countervailing proof." *Stevens*, 78 S.W.3d at 835 (citing *McDaniel*, 955 S.W.2d at 265). Moreover, it is worth emphasizing that the weight to be given to stated expert opinion and the resolution of legitimate but competing expert views are matters appropriately entrusted to the trier of fact. *Id.*

Questions pertaining to the admissibility of expert testimony are matters left to the trial court's discretion. *Brown*, 181 S.W.3d at 273; *McDaniel*, 955 S.W.2d at 263. This is particularly true in condemnation cases where a trial court is allowed "wide discretion" when ruling on the admissibility of an expert's testimony as to the value of the land taken "because the weight to be given each expert's testimony is for the trier of fact." *City of Murfreesboro v. Pierce Hardy Real estate, Inc.*, M2000-00562-COA-R9-CV, 2001 WL 1216992, at *2 (Tenn. Ct. App. Oct. 12, 2001) (citing *State ex rel. Dep't of Transp. v. Brevard*, 545 S.w.2d 431, 436 (Tenn. Ct. App. 1976); *Johnson City v. Outdoor West, Inc.*, 947 S.W.2d 855, 858

---

[2] In *McDaniel*, the court identified five nonexclusive factors that may be considered in determining the reliability of scientific expert testimony:

(1) whether scientific evidence has been tested and the methodology with which it has been tested; (2) whether the evidence has been subjected to peer review or publication; (3) whether a potential rate of error is known; (4) whether . . . the evidence is generally accepted in the scientific community; and (5) whether the expert's research in the field has been conducted independent of litigation.

*McDaniel*, 955 S.W.2d at 265.

(Tenn. Ct. App. 1996); *State Dep't of Transp. v. Veglio*, 786 S.W.2d 944, 947-48 (Tenn. Ct. App. 1989). Accordingly, we review the trial court's determination of the admissibility of an expert witness's testimony under an abuse of discretion standard. *City of Murfreesboro*, 2001 WL 1216992 at *2; *State Dep't of Transp. v. Veglio*, 786 S.W.2d 944, 947-48 (Tenn. Ct. App. 1989). "A trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party." *Scott*, 275 S.W.3d at 404-405 (citing *Konvalinka v. Chattanooga-Hamilton County Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn.2008)). The abuse of discretion standard does not permit the appellate court to substitute its judgment for that of the trial court. *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001).

The City objected to Mr. Parrish's testimony related to the issue of incidental damages, asserting that the testimony was outside the scope of discovery, lacked a foundation, was irrelevant, was not supported by reliable facts or data or calculated by any methodology, and was based on his mere speculation. Specifically, the City argued that Mr. Parrish acknowledged that there were no professional studies conducted regarding the impact of water tanks on surrounding property values and that the TVA and TDOT reports referenced in his testimony were not only irrelevant in that they did not study water tanks, but that had not been disclosed in Mr. Parrish's expert opinion report submitted to the trial court. The City further objected to Mr. Parrish's opinion that the property suffered a 12.5 percent loss of value as a result of the construction of the water tank because it was not based on any methodology, but merely his speculation.

The trial court admitted Mr. Parrish's testimony, concluding that Mr. Parrish was merely making general statements about his professional experience with the TVA and TDOT studies and the manner in which such experience generally informed his analysis in this case. The trial court clarified that if Mr. Parrish intended to "get[] into the technicality of the reports" then the trial court would sustain the City's objection with respect to those reports since the reports were not included in Mr. Parrish's expert opinion report submitted to the court as evidence. The City also objected to Mr. Parrish's opinion testimony as to the amount of incidental damages; the trial court overruled the objection explaining that the City was free to cross-examine Mr. Parrish about the issue. The court also instructed the jury that the matter of whether the experts used proper or correct data in their analysis would be a primary issue for them to decide as part of their duties.

On appeal, the City argues that "Mr. Parrish did not refer to any comparable sales, market data or any other facts upon which he might have based his opinion" that Mr. Cawthon's property on the west side of Ragsdale Road had a diminished value of 12.5 percent as a result of the tank being built at the crest of the hill. Further, the City points out

that Mr. Parrish admitted on cross-examination that he had not researched the sales of properties surrounding other water tanks in the vicinity as such research was not "part of [his] assignment." The City concedes that Mr. Parrish's testimony would be considered non-scientific; however, it argues that Mr. Parrish was still required to employ a foundational methodology when reaching his opinion and that he failed to do so because he failed to explain how he arrived at his opinion of 12.5 percent diminution in value other than to rely on TVA power line and TDOT highway cases, which the City contends are irrelevant to the issue of water tanks. The City also contends that Mr. Parrish's testimony was "merely an iteration of what he believed would be within the juror's common sense, disguised as an expert opinion," which does not satisfy the requirement that expert testimony "substantially assist" the trier of fact to be admissible. Finally, the City asserts that the trial court utilized an incorrect legal standard by instructing the jury to determine "whether the experts used proper or correct data in their analysis," thus incorrectly shifting the burden of gatekeeper of expert testimony to the jury.

We do not find that the trial court abdicated its role as gatekeeper or otherwise abused its discretion in admitting Mr. Parrish's testimony relating to incidental damages. The gatekeeper role that the trial court plays with respect to expert testimony is "to ensure that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Scott*, 275 S.W.2d at 401-02. The Tennessee Supreme Court recently clarified the trial court's role as gatekeeper with respect to expert testimony:

> While a trial court's role as a gatekeeper is critical, it is not unconstrained. When making an admissibility determination, trial courts are not empowered to choose between legitimate competing expert theories by excluding the lesser of the two. To the contrary, that task must be left to the trier of fact. The party proffering expert testimony need not establish that the expert testimony is correct, only that the expert testimony "rests upon 'good grounds.'" Where such a foundation exists, even if the trial court is of the view that there are better grounds for an alternative conclusion, the proffered expert testimony "should be tested by the adversary process-competing expert testimony and active cross-examination-rather than excluded from jurors' scrutiny for fear that they will not grasp its complexities or satisfactorily weigh its inadequacies."

*Scott*, 275 S.W.3d at 404 (internal citations omitted).

In addition to testifying about his experience as a real estate appraiser generally, Mr. Parrish testified about his personal experience and familiarity with other large public works

projects that diminished the visual appeal of properties in their vicinity. This testimony served to establish a connection between Mr. Parrish's knowledge of and experience with large public projects that were not aesthetically pleasing and the basis for his opinion as to the impact of the large concrete structure affecting the property in this particular case. *See Stevens*, *supra*. We note the trial court's statement while ruling on the City's motion for a directed verdict that "while still testifying within his field [of expertise], certainly [he] was reaching a bit" and understand the City's contention that Mr. Parrish did not fully explain how or why he concluded that the water tank resulted in 12.5 percent diminution in value. Nevertheless, there was sufficient connection between Mr. Parrish's knowledge and experience to give reliability to his opinion, such that we cannot conclude that the trial court abused its discretion in allowing the testimony, which could then be challenged on cross-examination and ultimately weighed by the jury. See *Scott*, 275 S.W.3d at 404; *see also Pierce v. Hardy*, No. M2000-00562-COA-R9-CV, 2001 WL 1216992, at *4 (Tenn. Ct. App. Oct. 2001) (the methodology used by an appraiser goes to the weight to be given his opinion . . . and the trier of fact is the final arbiter as to the credibility and weight of testimony)*; Davidson County Bd. of Educ. v. First Am. Nat'l Bank*, 202 Tenn. 9, 301 S.W.2d 905, 911 (Tenn. 1957).

### B. Proper Measure of Incidental Damages

The City contends that Mr. Parrish's expert opinion of the amount of incidental damages should have been "disregarded" because he failed to use the proper methodology for calculating incidental damages. Specifically, the City contends that Mr. Parrish (1) focused on a "percentage loss" of value rather than determine the fair market value of the property immediately after the taking and (2) "blurred the distinction between damages for the property taken and damages to the remainder" by "equat[ing] the loss of view from the top of the hill with 'unsightliness of the property.'" The City further contends that without Mr. Parrish's testimony, there was no other evidence in the record to support an award of incidental damages.

As previously noted, incidental damages are generally measured by the difference in the remaining property's fair cash market value, immediately before and immediately after the taking. *Mills*, 43 S.W.3d at 508-09; *State ex rel. Shaw*, 596 S.W.2d at 797; *Betty*, 797 S.W.2d at 7. Incidental damages are appropriate when the "difference" between the value before and the value immediately after the taking is a diminution in value of the remaining property. See Tenn. Code Ann. § 29-16-114(a)(1); Tenn. Code Ann. § 29-17-910. All capabilities of the property and all the legitimate uses for which it is available and reasonably adapted are to be considered in determining value. *Love v. Smith*, 566 S.W.2d 876, 878 (Tenn. 1978). Accordingly, in determining the difference or diminution in value, it is appropriate to consider the ways in which the taking adversely affected the capabilities and

uses of the property, including unsightliness of the property or inconvenience in its use. *See* 8 *Tenn. Prac. Pattern Jury Instr. - Civil* § 11.04 Partial Taking – Incidental Damages (2009).

Mr. Parrish testified that the taking of the property and construction of the water tank diminished the value of the remainder of the western tract of Mr. Cawthon's property by 12.5 percent; in other words, the value of Mr. Cawthon's property immediately after the taking was 12.5 percent less than immediately before the taking. Applying this percentage figure to the pre-taking value of the property resulted in a monetary figure of $194,850, the amount awarded by the jury. While Mr. Parrish's methodology of calculating incidental utilized a percentage of loss to the property's value prior to the taking rather than a determination of actual value after the taking (and subtraction of that figure from the pre-taking value) may not be the easiest or most preferred method for calculating incidental damages, the method is based on more than mere speculation inasmuch as it incorporates and gives credence to the elements properly considered in determining whether incidental damages have been incurred, e.g., unsightliness of the property and inconvenience in its use. "[A]n expert witness is not disqualified to testify merely because he may have used some criteria in arriving at his opinion which is not altogether the standard among appraisers." *Pierce*, 2001 WL 1216992, at *4; *Brevard*, 545 S.W.2d at 436. "[T]he methodology used by an appraiser goes to the weight to be given his opinion." *Pierce*, 2001 WL 1216992, at *4 (citing *Davidson County Bd. of Educ. v. First Am. Nat'l Bank*, 202 Tenn. 9, 301 S.W.2d 905, 911 (Tenn. 1957). Mr. Parrish's testimony was subjected to cross-examination and the jury properly instructed to accord it such weight as the jury it determined to be appropriate. Accordingly, we do not find that Mr. Parrish's expert opinion should have been "disregarded," as the City contends.

We also do not find that Mr. Parrish "blurred" the lines between the value of the property taken and the incidental damages to the remainder of the property in his analysis. Mr. Parrish's report and testimony clearly differentiated between the two values and Mr. Parrish conducted separate analyses for each amount. Mr. Parrish appropriately included the unsightliness of the property with the water tank being visible from Mr. Cawthon's remaining property. *See* 8 *Tenn. Prac. Pattern Jury Instr. - Civil* § 11.04 Partial Taking – Incidental Damages. We find it was also appropriate for Mr. Parrish to include in his consideration of the amount of incidental damages the remaining property's loss of the view of the surrounding area from the top of the hill. Mr. Parrish testified that it was his personal experience that properties in the area that did not have a hilltop on which to build and view the surrounding area would not be as valuable as a property with such a hilltop. In determining the market value of property, whether measuring such value before the taking or after, every element which can fairly enter into the question of value may be considered. *See Love*, 566 S.W.2d at 878; *Brevard*, 545 S.W.2d at 434; *Alloway v. City of Nashville*, 88 Tenn. 510, 13 S.W. 123 (1890). Consequently, we do not think that Mr. Parrish's opinion

as to the amount of incidental damages due Mr. Cawthon improperly included the loss of the hilltop view as it is clearly an element of value for this particular property.

## III. Conclusion

For the foregoing reasons, we affirm the judgment of the trial court.

Costs are assessed to the Appellant, the City of Brentwood.

_____

RICHARD H. DINKINS, JUDGE